[Civ. No. 2412.   Second Appellate District.—November 22, 1917.]

FRANK BARTOLLOTI, Appellant, v. POLICE COURT OF THE CITY OF LOS ANGELES et al., Respondents.

BOTTLING ACT—PROTECTION OF OWNERS OF RECEPTACLES AND GENERAL PUBLIC—CONSTITUTIONAL LAW.—The act of the legislature (Stats. 1911, p. 416), providing that persons engaged in manufacturing, bottling, and selling certain commodities may file in the office of the county clerk and of the Secretary of State a description of the names, marks, or devices used on their receptacles, and that it shall be unlawful *for any person to refill* receptacles so marked without the written consent of the person whose mark is thereon, is not violative

of section 11 of article I of the state constitution or of the four-
teenth amendment of the federal constitution as class legislation,
since the act not only protects the owners of such containers, but
also protects the general public against adulteration of such com-
modities.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Leslie R. Hewitt, Judge.

The facts are stated in the opinion of the court.

James W. Bell, and Noel C. Edwards, for Appellant.

Rose S. Phillips, Deputy City Prosecutor, and Martin E.
Geibel, for Respondents.

WORKS, J., *pro tem.*—In this proceeding the appellant
seeks a writ of prohibition restraining the respondent police
court from trying him under a charge of having committed a
misdemeanor in violating the provisions of a certain act of
the legislature. The respondents answered and made a mo-
tion for judgment on the pleadings, which was granted. The
appeal is from the judgment.

The act under which it is sought to punish Bartolloti is
found at page 416 of the Statutes of 1911 (Deering's Gen.
Laws, Act 4122). Section 1 of the act provides, to state
it in general terms, that persons engaged in manufacturing,
bottling, and selling certain commodities, also specifically
mentioned in section 2, which is set forth below, may file in
the office of the county clerk and of the Secretary of State
a description of the names, marks, or devices used on the
receptacles in which the commodities are sold, and cause the
description to be published for a certain period in a news-
paper.

Section 2 of the act follows: "It is hereby declared to be
unlawful for any person or persons, corporation or corpora-
tions, to fill with olive oil, salad oil, or any substitution there-
for, or similar to olive oil, ripe or green olives, soda waters,
mineral or aerated waters, porter, ale, cider, ginger ale, milk,
cream, beer, small beer, larger beer, weiss beer, white beer,
or other beverages, or Worcestershire or other sauce or sauces
or with medicine, compounds, or mixtures, any bottle, box,
siphon or keg, so marked or distinguished as aforesaid, with
or by any name, mark or device, of which a description shall

have been filed and published, as provided in section one of this act, or deface, erase, obliterate, cover up, or otherwise remove or conceal any such name, mark or device thereon, or to sell, buy, give, take or otherwise dispose of or traffic in the same, without the written consent of, or unless the same shall have been purchased from the person or persons, corporation or corporations, whose mark or device shall be or shall have been in or upon the bottle, box, siphon, or keg so filled, trafficked in, used, or handled as aforesaid. It is hereby declared to be unlawful for any person, firm, or corporation engaged in the manufacture, preparation or selling of drugs, or food products to use bottles, in bottling or packing their products that have been previously used for other purposes. Any person or persons or corporation offending against the provisions of this section shall be deemed guilty of a misdemeanor, and shall be punished for the first offense by imprisonment of not less than ten days nor more than six months or by a fine of fifty cents for each and every such bottle, box, siphon or keg so filled, sold, used, disposed of, bought, or trafficked in, or by both such fine and imprisonment; and for each subsequent offense by imprisonment not less than twenty days nor more than one year, or by a fine of not less than one dollar nor more than five dollars for each and every bottle, box, siphon, and keg so filled, sold, used, disposed of, bought or trafficked in, or by both such fine and imprisonment, in the discretion of the magistrate before whom the offense shall be tried.''

In passing this law the legislature had at least two purposes in view. One of these was to protect the owners of a certain kind of property, peculiar in character and devoted to a peculiar use, as compared with property generally. Another object was the protection of the general public from fraud, imposition, and deception. It is from both these aspects that the statute must be viewed from time to time, as we consider the various objections which are made to its constitutionality by the appellant.

It is insisted that the act is invalid because it makes it unlawful for any person to refill receptacles marked or distinguished as provided in the act or to sell or traffic in them without the written consent of the person whose mark is upon the receptacle. In considering this point we are to regard the statute as one for the protection of the owners of receptacles and not as one for the protection of the general

public.   No argument need precede the assertion that the pro-
tection or good of the general public cannot constitutionally
be made to depend upon the consent of any private individual
or group of individuals.

That the statute is constitutional in that feature of it which
looks to the protection of individuals is now comparatively
well settled.    There are statutes upon the general subject in
many of the states of the Union.    Some of these have been
held unconstitutional, but they have been so declared largely,
but not altogether, because of differences between them and
the act which is now before us.    The California law is the
counterpart of acts which have been passed in several of the
states.    Where that general form of statute is in effect, it has
been generally if not always held to be constitutional as
against all grounds of assault upon it.    While we speak now
only of the feature of the statute designed to protect owner-
ship in receptacles, by requiring the written consent of the
owners to their use, the cases which we cite cover other objec-
tions which have been made to the constitutionality of such
enactments. (*People* v. *Cannon,* 63 Hun, 306, [18 N. Y. Supp.
25] ; *People* v. *Cannon,* 139 N. Y. 32, [36 Am. St. Rep. 668, 34
N. E. 759] ; *Commonwealth* v. *Anselvich,* 186 Mass. 376, [104
Am. St. Rep. 590, 71 N. E. 790] ; *Commonwealth* v. *Goldburg,*
167 Ky. 96, [180 S. W. 68].)   These cases thoroughly meet
the contention that the act is unconstitutional upon the
ground now under consideration.    That it provides for the
protection of the property rights of a certain class of citizens
there can be no doubt, but the classification is entirely jus-
tified for the reason that the property is of a peculiar char-
acter and devoted to a peculiar use, as we have already stated.
The owners of the property are entitled, therefore, in the
exercise of a discretion which has been left to the legislative
will, to a peculiar protection in their ownership. (*Common-
wealth* v. *Anselvich, supra.*)

The most exhaustive as well as one of the latest cases on the
particular subject under present discussion, as well as upon
the general constitutional questions in this action presented,
is *Commonwealth* v. *Goldburg, supra.*   The court of appeal of
Kentucky there said:

"It is of course manifest that in the enactment of this law
the legislature intended to and did create a class, and intended
to and did protect this class in the use of the branded con-

tainers employed by in it its business. And to make more
effective the purpose of the law, it provided means by and
through which persons violating its provisions might be pun-
ished. But so far as the mere question of the authority for
legislative classification is concerned, there is no room for dis-
pute. It has been time and again settled by court everywhere
that it is competent for the legislature to create classes and
deal with these classes, both in respect to civil as well as crim-
inal rights and liabilities, separately, the only limitation
being that the classification must rest upon some reasonable
difference existing between the class selected for treatment
and other classes of persons or property. So that the mere
fact that the legislature may confer upon a certain class
rights and privileges not enjoyed by other classes is in itself
no objection to the statute, unless the classification is arbi-
trary or unreasonable. . . . The criminal laws of the state
are made up of classifications. Almost every criminal statute
selects a class and treats it separately. The statutes that
impose a punishment for forgery, larceny, embezzlement,
destroying property, obtaining money by false pretenses, giv-
ing worthless checks, making false statements, selling mort-
gaged property, wrongfully converting money or property,
and for selling misbranded seeds or foods, are pertinent illus-
trations of the right of classification and the extent to which
it has been carried. So, too, this same rule of classification
has been extended with equal freedom and equal authority
to statutes not penal in their nature, but only intended to
regulate civil or contract rights and liabilities. Examples
of this character of legislation are found in the banking laws,
the insurance laws, laws relating to negotiable instruments,
and laws regulating telephone and telegraph companies, com-
mon carriers, and the sale of foodstuffs.''

In a case not cited above, *Rhodes* v. *Sperry & Hutchinson
Co.*, 193 N. Y. 223, [127 Am. St. Rep. 945, 39 L. R. A. (N. S)
1143, 85 N. E. 1097], language was used by the court which
is in point here, although the action was not a criminal
one, but was a civil action for damages and for an in-
junction. It was brought under a statute of New York
which provided that the portrait of any living person should
not be used for advertising purposes without his consent.
The court said: ''While it appears to be conceded by counsel
for the appellant that the legislature may declare any act to be
a private tort which it may declare to be a public offense,

the requirement of a written consent to authorize the use of one's name or portrait by others for advertising or trade purposes is denounced as an interference with personal liberty 'without due process of law.' I am unable to see that this requirement is any more objectionable than was that in the statutes under consideration in the case of *People* v. *Cannon,* 139 N. Y. 32, [36 Am. St. Rep. 668, 34 N. E. 759], commonly known as the 'Bottling Act' (Laws 1887, p. 475, c. 377, amended by Laws 1888, p. 242, c. 181). That statute declared it to be unlawful for any person to fill with beverages or medicine any marked bottle, without the written consent of the person or corporation whose mark or device had been placed upon the bottle, and it was construed to be constitutional in all respects. It would not be difficult to refer to many examples of legislation in which the right to a civil remedy was made dependent upon the absence of consent in behalf of the party claiming to be injured. Thus the copyright laws of the United States prescribe the forfeiture of a book published in violation thereof, and permit a civil action for damages only where the publication of the copyrighted work is made 'without the consent of the proprietor of the copyright first obtained in writing signed in the presence of two or more witnesses.' Rev. St. U. S. sec. 4964 (U. S. Comp. St. 1901, p. 3413)."

Bartolloti contends that the act violates the provisions of section 11 of article I of the constitution of the state, which reads that "all laws of a general nature shall have a uniform operation"; as well as the clause of the fourteenth amendment to the federal constitution to the effect that no state shall "deny to any person within its jurisdiction the equal protection of the laws"; in brief, that the act is class legislation.

In support of this general claim as to the invalidity of the act, a discussion of which has to some extent been anticipated above, Bartolloti specifies certain more particular objections. He points out that the statute is silent as to the disposition of the contents of refilled receptacles; that it is not concerned with the intent operating in the mind of one who refills them, although it makes the refilling a crime; that it is not, therefore, directed at the possible adulteration of contents; and that it is designed, solely, for the protection of the owners of receptacles.

If these assertions were all justly made, there would be some room for the contention that the statute is class legislation, for the legislature may not pass laws intended to protect the owners of specific kinds of property in their ownership, to the exclusion of all other kinds, unless the property the owners of which are so protected is so different from property generally as to require or deserve the enactment of special laws in regard to it. This particular question we have discussed above. This law, however, was enacted partially for the purpose, as we have already stated, of protecting the public from the adulteration or imitation of a large and general class of commodities which lend themselves, with greater or less ease, to adulteration and imitation. It happens, incidentally, looking now at the act as for the protection of the public alone and forgetting what we have said above as to its features as a protection of ownership, that the venders of such commodities are by it protected in the use and ownership of the receptacles in which their wares are customarily sold. This is no objection to the validity of the statute. If the general public is protected by a statute in those matters in which the law-making power owes protection to the public in a due exercise of the police power, it can make no difference that the statute at the same time yields a peculiar benefit to some class or classes of persons. The commodities mentioned in the act may very well become known, and it is a matter of common knowledge that they do become known, by the coverings under which they are vended. Adulteration and imitation could therefore readily be accomplished if the receptacles were permitted indiscriminately to be re-used by any but the producers of the articles which they were originally designed to cover and which they have come to be recognized by the world as actually covering. The subject matter of the act bears a distinct and appropriate relation to its purpose to protect the public. (*In re Griffenhagen,* 18 N. Y. Supp. 29, note; *People* v. *Cannon, supra; Commonwealth* v. *Anselvich, supra; Commonwealth* v. *Goldburg, supra.*)

Section 4 of the act provides that whenever any person who has registered a description of the name or mark used by him on receptacles in which he vends his wares, as allowed by section 1, makes oath before a magistrate, that he has reason to believe that any of his receptacles are being unlawfully used or filled by any person, "the said magistrate must thereupon

issue a search-warrant to discover and obtain the same."
Thereupon the magistrate may cause the alleged illicit holder
of the receptacles to be brought before him, may inquire into
the circumstances of his possession, must punish him if he
finds him guilty, and must, in that event, award the posses-
sion of any property taken under the search-warrant to the
owner.

Bartolloti contends that section 4 is unconstitutional both
as invading his right to personal liberty and his right of prop-
erty. The record does not present the question of an un-
constitutional invasion of the right to personal liberty. The
amended petition for prohibition contains, aside from the
statement of certain conclusions of law as to unconstitu-
tionality, only the following allegation concerning the search-
warrant, omitting formal verbiage: "That . . . one Nate
Volen made application to the said Police Court . . . for two
search-warrants in the form of affidavits, . . . and thereupon
the said Police Court . . . issued two search-warrants . . . ;
that thereafter . . . your petitioner herein was served with
said search-warrants and at the same time placed under arrest
for the alleged violation" of the statute. From this language
it plainly appears that the arrest may have been entirely sepa-
rate and apart from all questions involving either the issu-
ance or service or the conduct of any proceedings whatever
under the search-warrant. Under the law Bartolloti could
have been arrested under the provisions of section 2 of the
act, without any attempt to resort to proceedings under
search-warrant (Pen. Code, secs. 1426, 1426a, 1427); and we
must assume against the pleader that he was so arrested. As
a matter of fact, it is that section which he is charged with
having violated.

Nor can any question arise here on the score of an invasion
of Bartolloti's premises for the purpose of prosecuting search
under the warrant. It will be noted that the amended peti-
tion alleges only that the search-warrant was "served." This
falls far short of a statement that Bartolloti's property was
invaded for the purpose of making search. It is conceivable
that one to whom a search-warrant is delivered by an officer
might surrender without search the property described in the
warrant. But if we pass this question by, it is sufficient to
say, granting that there was an invasion of Bartolloti's prop-
erty under the search-warrant, that the act has been com-

pleted, and that prohibition, from its very nature, cannot be invoked to prevent it.

It is palpable, also, that in this case no question can be presented because of the constitutional provision that property cannot be taken without due process of law, under the language of the statute commanding the magistrate to award to the owner any property taken under search-warrant. Even if we concede that the allegation of the petition that the warrant was served includes the statement that search was made under it, there is no allegation whatever that any property was either found or taken.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.