### CITY OF SAN ANTONIO et al. v. SOUTH TRUNK CO. (No. 8172.)

Court of Civil Appeals of Texas. San Antonio. Jan. 9, 1929.

Rehearing Denied Feb. 6, 1929.

T. D. Cobbs, Jr., and Denman, Franklin & Denman, all of San Antonio, for appellants.

Bruce Teagarden, Leonard Brown, and C. J. Matthews, all of San Antonio, for appellee.

SMITH, J. The appeal involves the validity of an ordinance passed and sought to be enforced by the city commissioners of the city of San Antonio. The power thus sought to be exercised by the commissioners is claimed to arise out of the grant of authority given them by virtue of the provisions of sections 99 and 100 of the City Charter, as follows:

"§ 99. To license, regulate and inspect all trades, professions, occupations, callings and business carried on in said City whenever and wherever the Commissioners should deem such regulation, inspection and license necessary or proper for the good order, public health, public safety, or general police regulation of said City, and charge license and inspection fees therefor, and such fees shall not be construed as occupation taxes. * * *"

"§ 100. The Commissioners in addition to the powers herein enumerated shall have the power to pass, publish, amend or repeal all ordinances, rules and police regulations not contrary to the Constitution of the State and this Charter and necessary for the order or good government of the City, or the trade, commerce and health thereof, or that may be necessary and proper to carry into effect the powers here vested in the corporation or any part of its officers. To enforce the observance of all ordinances, rules and police regulations and to punish violations thereof by fines and imprisonment, or either or both, or by work on the streets or public work, as may be provided by ordinance and required by the judgment of the corporation court. * * *"

The ordinance in question (section 1) prohibits the sale at public auction, except as made in compliance with the provisions of the ordinance, and under license therefor to be obtained from the mayor or commissioner of taxation, of "jewelry, diamonds, or other precious or semi-precious stones, watches, clocks, pictures, paintings, gold or silver ware or plated ware, rugs, carpets, trunks, suit cases, satchels, curios, bed spreads, table covers, table cloths, napkins, doilies, shawls, stationery, glass ware, porcelian, and bric-a-brac." It was provided in the ordinance that its provisions should not apply to "judicial sale or sales made by executors or administrators or to sales by trustees, mortgagees, or assignees under the terms of any instrument given to secure a bona fide indebtedness under which he exercises the power of sale, nor to sales made by or in behalf of licensed pawn brokers of unredeemed pledges, nor to sales of unclaim-

ed freight or express as provided by law, nor to sales by sheriffs, constables, or other officers as provided by law, nor to any other particular kind of auction sale expressly authorized by the laws of Texas or by the laws of the United States."

It is further provided in the ordinance (section 2) that persons desiring to hold an auction sale or sales of the articles mentioned shall make application to the mayor or tax commissioner for license therefor; that said officials may issue such license for a period not exceeding one year, upon compliance by the applicant with the terms of the ordinance. The provisions of the ordinance are further described in appellant's brief, as follows:

"Section 3 provides for the form of the application for license.

"Section 4 requires that the application shall have attached to it a sworn description of the goods to be auctioned and requires that the application and description when made shall be kept on file in the office of the Commissioner of Taxation as a part of the public record and an index of the person, firm or corporation to whom license may have been issued shall be kept in the office of the Commissioner and that no goods mentioned in the ordinance shall be sold at auction except those referred to and included in the description.

"Section 5 requires the giving of a bond by the person obtaining the license in the sum of $5,000.00 with stipulations in said Section contained; the bond to inure to the benefit of all persons who may sustain loss or damage on account of any misrepresentation or violation of the ordinance, and fixing the venue of suit upon the bond and makes the remedy thereon additional to and cumulative of all other remedies the party may have at law or equity.

"Section 6 gives the power of inspection and investigation of the goods to be auctioned to the Mayor or Commissioner of Taxation of the City.

"Section 7 provides for the payment of a $25.00 license fee.

"Section 8 makes it unlawful for the person acting as auctioneer to make material misrepresentations of fact, etc., with reference to the goods offered for sale.

"Section 9 makes it unlawful for any person to act as a by-bidder or what is commonly known as 'capper' or 'booster' at the auction sale.

"Section 10 makes it the duty of the auctioneer to make reasonable description of a person bidding as the bid is announced or to point out or otherwise designate the bidder.

"Section 11 makes it the duty of the person conducting the auction to give to the purchaser of every article the selling price of which amounts to the sum of $2.50 or more an invoice containing description of the article and the selling price.

"Section 12 defines the meaning of the term 'person' as used in the ordinance.

"Section 13 provides the penalties for violation thereof and authorizes the revocation of the license, but contains the provision that no revocation shall prohibit or disqualify the licensee from making application for a new license.

"Section 14 inhibits auction sales in public vacant lots, public streets, etc.

"Section 15 provides that if the license is refused by the Mayor or Commissioner of Taxation the applicant shall have the right to present the application to the Mayor and Commissioners of the City for action thereon and that their action shall be final.

"Section 16 confers upon the Mayor and the Commissioners of the City the right to revoke licenses.

"Section 17 provides that no auction sales shall be had between the hours of six P. M. on one day and eight A. M. on the following day, unless the license granted expressly authorizes sales during those hours.

"Section 18 repeals all parts of ordinances in conflict.

"Section 19 provides that if any part of the ordinance be held invalid or unenforcible that such holding shall not be construed to affect any other valid portion of the ordinance but that all such other portions shall remain in full force and effect."

The ordinance concludes with the following emergency clause: "On account of promiscuous auction sales made by traveling auctioneers, as well as on account of the many acts of fraud, extortion and oppression growing out of misrepresentations and deceit practiced at auction sales on the public by unregulated auctioneers, engaged in the selling of the goods above described, there is created an urgency and an emergency in behalf of the preservation of the public peace, health and safety and requires this Ordinance to become effective upon its passage. It is accordingly so ordained that this Ordinance shall become effective immediately upon its passage, as in the Charter of this City in such cases made and provided."

The ordinance was passed finally by the commission on December 10, 1928, and on the following day, in response to the application of South Trunk Company, a private corporation engaged in the sale of trunks and related merchandise in San Antonio, the trial court granted an order restraining the enforcement of the ordinance until December 14, at which time the city was required to show cause why a temporary injunction should not be granted against the enforcement of the ordinance. Upon a hearing on the date set, the temporary injunction was granted, and the city and its commissioners have appealed from the order thereon.

■■ The business sought to be regulated by the ordinance in question is a lawful business, but it is of such nature as to render it subject to reasonable regulation by municipal corporations in the exercise of the police powers reserved to the states under the federal Constitution and delegated to the city of San Antonio by the Legislature of Texas, in section 99 and section 100 of the Charter granted to said city, hereinabove set out. By the same provisions of the organic law of the city the question of the necessity for municipal control and regulation of a particular business or trade or profession or calling is confided to the judgment and discretion of the city commissioners, and under familiar rule of construction the commissioners' determination of the question of necessity is conclusive, except in cases of gross abuse thereof, and the manner in which they exercise the granted power after assuming to act therein is likewise conclusive, unless it is affirmatively made to plainly appear that their action is purely arbitrary, or capricious or fraudulent, or constitutes a clearly proven gross abuse of the discretion confided in them by the grant under which they act. King v. Guerra (Tex. Civ. App.) 1 S.W.(2d) 373 (writ of error denied), and authorities there cited.

■ The ordinance is attacked by appellee upon the ground that its provisions effectuate class legislation, because of the named exemptions from its operation, such as judicial sales, sales by executors and administrators, trustees, mortgagees, licensed pawnbrokers or unredeemed pledges, sales of unclaimed freight and express, sales by peace officers as provided by law, and "any other particular kind of auction sale expressly authorized by" federal and state laws. It seems that these exemptions relate to auction sales now being regulated by state and federal statutes. It is obvious that any attempt by the municipal corporation to regulate such sales would be futile, because the delegating authorities, the Congress and the Legislature, by assuming to legislate upon the immediate subject with respect to those exemptions, have withheld from the municipality the power of control over such sales, and have specifically prescribed the time, place, and methods of such sales. By this process the higher authority took over the regulation of the transactions exempted from the operation of this ordinance, leaving to the municipal authorities the power to regulate those auction transactions not embraced within the exemptions. We perceive no material discrimination on account of the exemptions complained of by appellee. The transactions embraced within the exemptions are peculiar to themselves, evolved out of the misfortunes or defaults of the owners of the property to be sold, and merged into a status calling for the protection of the government against oppression. By this process they become segregated from the general classification of auction sales, entitling them to exemption from the operation of municipal regulatory statutes and ordinances applicable to the general class.

■■ Appellee asserts that the ordinance is discriminatory and amounts to class legislation, in that it includes within its operation the auction of particular articles, such as doilies, glass ware, shawls, and the like, but we perceive no force in this contention. It will be presumed, in the absence of clear evidence to the contrary, that in the exercise of their power to regulate the business involved the commissioners had sufficient reason, in view of local conditions, to include in the operation of the ordinance the auction of the articles specified therein. The determination of such matters is intrusted, by implication from the terms of the grant, to the governing board; and the courts cannot assume to interfere with that purely governmental function by saying that, under the peculiar conditions existing in the city and confronting the board, that body was not warranted in including any particular article or class of articles within the operation of the ordinance. Appellee's objection goes generally to several of the articles mentioned in the ordinance, and while we overrule this objection, we do so primarily upon its generality. Had appellee stressed a particular article, or all of the articles objected to, and had shown clearly that either or all of them were named in the ordinance arbitrarily, capriciously, or fraudulently, and in the absence of any relation between those articles to the evil sought to be remedied by the operation of the ordinance, the courts would set aside the ordinance in so far as it was designed to affect those articles. No such showing is made, however, and the objection fails in its entirety.

■ We have discussed the objections to the ordinance specifically made by appellee in its bill for injunction, leaving certain other objections now to be noticed. It was alleged that the ordinance is invalid for the reasons it is "in restraint of trade," but no specific facts are alleged to support this general conclusion of the pleader; that the ordinance is an "unwarranted interference with a legitimate business, prescribing conditions so onerous that it in effect prohibits sales at auction," but this conclusion is supported by no allegations of the specific facts from which the pleader draws that conclusion. So is it alleged that the ordinance is violative of both the federal and state Constitutions, in that it is "in restraint of freedom of trade, denies equality before the law, denies the right of the citizen to act, and is class legislation," but no facts are set out in support of this conclusion. Obviously, these allegations are but mere conclusions of the pleader, and, in the absence of further allegations of specific facts justifying the conclusions, they are not

sufficient to invoke the aid of a court of equity through the exercise of extraordinary writs, such as that sought here.

We are of the opinion that the bill did not entitle appellee to the injunction granted, and accordingly the order granting the writ will be reversed and the injunction dissolved.