[S. F. No. 14318. In Bank.—January 26, 1932.]

PACIFIC COAST DAIRY (a Corporation), Appellant, v. POLICE COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

William P. Hubbard for Appellant.

Jesse H. Steinhart and John J. Goldberg for Respondents.

THE COURT.—Contending that the act is unconstitutional, the appellant, Pacific Coast Dairy, petitioned the superior court for a writ of prohibition restraining the respondent Police Court of San Francisco from proceeding to try it upon the charge of having violated section 18 (b) of the General Dairy Law. The trial court denied the writ, and the District Court of Appeal, First Appellate District, Division Two, in an exhaustive opinion, prepared by Mr. Presiding Justice Nourse, affirmed the lower court. The cause was transferred here for further consideration of the contentions raised by the appellant, but, after such consideration, this court is satisfied with the opinion written by Mr. Justice Nourse, and it is adopted as follows:

"The complaint upon which the petitioner was charged alleged that it 'did wilfully and unlawfully use, fill and traffic in, and did fail and refuse to restore and return to the owner thereof two certain quart-sized glass milk bottles . . . duly registered by the department of agriculture of the state of California, as required by law on the application of the owner thereof, to-wit: The Milk Dealers Association of San Francisco, an association whose members are engaged in receiving, producing . . . handling, and selling milk . . . and such facts being then and there known to said defendants, and said defendants having then and there failed and refused to make diligent or any effort to find such owner.'

"Subdivision (b) of section 18 of the General Dairy Law (Stats. 1929, pp. 1353, 1354) provides, in part: 'It shall be the duty of every person who finds or receives in the regular course of business or in any other manner any container marked with a brand registered under the provisions of this section to make diligent effort to find the owner thereof and to restore or return the same.'

"It is the contention of the appellant that the foregoing provisions of the General Dairy Law are unconstitutional as violating sections 11 and 21 of article I, and section 25, subdivisions 2 and 33 of article IV of the state Constitution. The two sections of article I referred to require laws of a general nature to have a uniform operation and prohibit laws granting special privileges or immunities. The subdivisions of section 25 of article IV referred to prohibit the legislature from passing local or special laws for the punishment of crimes and misdemeanors, or in any case where a general law can be made applicable. All these attacks upon the constitutionality of the provisions of the Dairy Law are treated under a single heading, and in the argument supporting the attack the appellant relies upon *Horwich* v. *Walker-Gordon Laboratory Co.*, 205 Ill. 497 [98 Am. St. Rep. 254, 68 N. E. 938], *State* v. *Baskowitz*, 250 Mo. 82 [Ann. Cas. 1915A, 477, 156 S. W. 945], *Yaeger* v. *State*, 78 Fla. 354 [83 South. 525], *State* v. *Schmuck*, 77 Ohio St. 438 [122 Am. St. Rep. 527, 14 L. R. A. (N. S.) 1128, 83 N. E. 797], and *State* v. *Wiggam*, 187 Ind. 159 [118 N. E. 684]. It would serve no purpose to discuss any one of these cases at length. Generally speaking they all involve statutes relating to the use of cans, boxes, bottles, barrels and similar containers by one who is not the owner thereof when they have brands or other marks of ownership impressed upon them. In each case the court held that the statute under consideration was unconstitutional as beneficial only to a particular class and as not related to the protection of public health, safety or welfare of the people at large. These cases were considered at length in *Bartolloti* v. *Police Court*, 35 Cal. App. 372 [170 Pac. 161], where the district court of appeal, having under consideration the California Container Act of 1911 (Stats. 1911, p. 416), rejected the authorities cited as not applicable under the California Constitution and cited with approval as an opposing line of

authorities on similar statutes *People* v. *Cannon,* 139 N. Y. 32 [36 Am. St. Rep. 668, 34 N. E. 759], *Commonwealth* v. *Anselvich,* 186 Mass. 376 [104 Am. St. Rep. 590, 71 N. E. 790], and *Commonwealth* v. *Goldburg,* 167 Ky. 96 [180 S. W. 68]. To the cases last cited *Renner Brewing Co.* v. *Rolland,* 96 Ohio St. 432 [118 N. E. 118], may be added, a case which involved an amendment of the statute considered in the earlier Ohio case of *State* v. *Schmuck, supra,* and which should now be taken as stating the Ohio rule. The opinion in the Bartolloti case is the last expression of the appellate courts of this state upon the constitutionality of statutes relating to the use of containers generally, and it must be treated as rejecting the rule of the cases here cited by the appellant and as accepting the more liberal and general rule announced in *People* v. *Cannon, supra,* and in the other cases heretofore cited.

 "On principle the General Dairy Law is manifestly a constitutional enactment, as it is designed to protect the traffic in milk and cream. The universal use of these products as food and their peculiar liability to contamination and adulteration supports the strictest regulation in the interest of public health and safety, and statutes which tend to that protection are wholly within the proper exercise of the police power of the state. (*Shelton* v. *City of Shelton,* 111 Conn. 433 [150 Atl. 811, 812]; *City of Milwaukee* v. *Childs Co.,* 195 Wis. 148 [217 N. W. 703, 704], and see generally 12 Cor. Jur., p. 1276, sec. 1080.) The General Dairy Law under consideration, as implied from its title, is a general statute to provide for the maintenance of a uniformly high standard of quality in dairy products, to prevent the manufacture and sale of unwholesome dairy products, to regulate the business of producing, buying and selling dairy products, and to provide for rules and regulations to carry out the provisions of the act. One of the provisions of section 18 (a) of the act is that all empty cans, bottles, vessels and other containers delivered to the consumer by retailer or distributor · shall be thoroughly cleansed before returning the same to the retailer or distributor. Section 13 of the act prohibits the use of containers for any other purpose than the handling of milk or the products of milk. For the purpose of making effective these wholesome regulations section 18 (b) provides a

method of registration with the department of agriculture of the brand or mark of the dealer and declares it to be 'the duty of every person who finds or receives in the regular course of business or in any other manner any container marked with a brand registered under the provisions of this section to make diligent effort to find the owner thereof and to restore or return the same'.

"In placing upon the dealer or distributor of dairy products the duty to provide sanitary cans, bottles and other receptacles the legislature has clearly acted within the scope of its police power for the benefit of the public at large. As a convenient method of enforcing these sanitary requirements the legislature deemed it necessary to provide for the branding of these receptacles by a registered brand or mark filed with the department of agriculture. This registration of the brand of the dealer or distributor would naturally facilitate the work of the enforcement officers in placing the responsibility upon the dealer or distributor where dairy products were sold or delivered in violation of the sanitary provisions of the act. In this connection the legislature may have found it necessary to enact the concluding portions of section 18 (b) which places the duty upon every person who finds or receives any such branded container to make diligent effort to find the owner and to restore or return the same to him. It is of no moment that some court or judicial body may deem that some of the provisions of a statute are unnecessary or unimportant 'the general power of the legislature to determine what is necessary for the protection of the public interests being clear, judicial inquiry is necessarily limited to determining whether a particular regulation is reasonable, impartial and within the limitations of the Constitution'. (*Renner Brewing Co.* v. *Rolland,* 96 Ohio St. 432 [118 N. E. 118, 120].) In viewing a statute of this character the courts must presume that the legislature has carefully investigated and has properly determined that the interests of the public require that legislation and 'It is also the province of the legislature, in the exercise of a sound discretion, to determine what measures are necessary for the protection of such interests.' (*Patrick* v. *Riley,* 209 Cal. 350, 356 [287 Pac. 455, 457]; see, also, *Matter of Application of Miller,* 162 Cal. 687, 693 [124 Pac. 427]; 5 Cal. Jur. 719, sec. 122;

*Durand* v. *Dyson,* 271 Ill. 382 [Ann. Cas. 1917D, 84, 111 N. E. 143, 146] ; *Lausen* v. *Board of Supervisors et al.,* 204 Iowa, 30 [214 N. W. 682, 684].)

■ "Assuming as we must that the legislature deemed it necessary to enact the latter part of this section in order to effectually enforce the sanitary provisions of the act, and reading this portion (as we must) as merely a part of the whole statute designed to regulate the traffic in dairy products we are unable to find in the legislation a lack of uniformity of operation or a grant of special privileges or immunities to any special class of citizens. In this respect we are controlled by the uniform rule of decision that statutes of this character do not offend against these provisions of the Constitution when they operate uniformly to all those of a designated class. (*Barbier* v. *Connolly,* 113 U. S. 27, 31. [28 L. Ed. 923, 5 Sup. Ct. Rep. 357] ; *Heron* v. *Riley,* 209 Cal. 507, 518 [289 Pac. 160].) Here the class embraces all those engaged in the dairy industry. We find nothing in the legislation which extends any special privileges or immunities which may not be enjoyed by all who come within that class.

■ "It need hardly be said that the class of citizens engaged in the manufacturing, producing, buying and selling of dairy products is not a special class but is one of state-wide operation, while the purchasers of those products include practically every citizen of the state. Such being the case, the statute under consideration is in no sense a local or special law, but is one of general state-wide operation designed to protect the health of every citizen of the state.

■ "The appellant launches his next attack upon the statute upon the ground that it is too vague, indefinite and uncertain to be enforceable as a penal statute. In this connection numerous authorities are cited to the general proposition that the terms of a penal statute creating a new offense must be sufficiently clear to explain to those who are subject to it what conduct on their part will render them liable to its penalties. Among these are *In re Peppers,* 189 Cal. 682 [209 Pac. 896], where the statute involved prohibited the shipment of oranges as unfit for shipment when they were frosted to the extent of endangering the reputation of the citrus industry; *Hewitt* v. *Board of Medical Examiners,* 148 Cal. 590, 592 [113 Am. St. Rep. 315, 7 Ann. Cas. 750,

3 L. R. A. (N. S.) 896, 84 Pac. 39], where the unprofessional conduct of a physician was defined in the statute as 'all advertising of medical business in which grossly improbable statements are made'; *In re Schmolke,* 199 Cal. 42, 48 [248 Pac. 244, 245], which attempted to exclude certain motor vehicles 'operating within the usual transfer delivery zones'; *Connally* v. *General Const. Co.,* 269 U. S. 385, 391 [70 L. Ed. 322, 46 Sup. Ct. Rep. 126], which required a contractor to pay his employees 'not less than the current rate of per diem wages'; and *United States* v. *Capital Traction Co.,* 34 App. D. C. 592, 598 [19 Ann. Cas. 68], which required a street railway company to run a sufficient number of cars to accommodate passengers 'without crowding'. Here again we may say that nothing would be served in analyzing each of these cases separately. In each case the court upon a review of the statute determined that it was not sufficiently definite to inform those subject to it what conduct on their part would render them liable to its penalties. The rule of all the cases cited is the rule of strict construction, a rule which our Supreme Court had in mind when in *Ex parte Daniels,* 183 Cal. 636, 646 [21 A. L. R. 1172, 192 Pac. 442, 447], it said: 'In this connection it may be stated that there has been a tendency to a much more liberal construction of such statutes in the more recent decisions, and this may in part be the result of more humane and liberal methods of dealing with those who are convicted of crime, and in part from the wide field now covered by the criminal law'; and again in *County of Tulare* v. *City of Dinuba,* 188 Cal. 664, 677 [206 Pac. 983, 988], when it said 'A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. ██ Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its construction will not justify us in disregarding it. (*State ex rel. Crow* v. *West Side St. Ry. Co.,* [146 Mo. 155 (47 S. W. 959)], *supra; People* v. *Lovren,* 119 Cal. 88 [51 Pac. 22, 638].)' ██ But in determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required of them the courts must endeavor, if possible, to view the statute from the standpoint of the reasonable man who might be subject to its terms. Thus, when a statute employs words or phrases

having a well-settled common law meaning of which a reasonable man in the ordinary conduct of his affairs is fully aware it is not for the court to determine that the statute is ambiguous or indefinite because through a strained construction of these words and phrases some ambiguity might arise. Thus in *Nash* v. *United States*, 229 U. S. 373, 377 [57 L. Ed. 1232, 33 Sup. Ct. Rep. 780, 781], it is said: 'the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. "An act causing death may be murder, manslaughter, or misadventure according to the degree of danger attending it" by common experience in the circumstances known to the actor.' And in *Hunt* v. *State*, 195 Ind. 585 [146 N. E. 329, 330], it was said that 'A court cannot nullify the enactment of the legislature because the language used is indefinite in some particular, unless the purpose or intent of the legislature cannot be ascertained. The intent of the legislature is the essence of the law, and the function of the court in construing legislative enactments is to ascertain the legislative intent, and to enforce such intent when ascertained.'

██ "Here the basis of appellant's attack is that it cannot be ascertained from the statute what the legislature meant when it required the finder of a branded container 'to make diligent effort to find the owner thereof and to restore or return the same'. This language is not new in legislative enactments relating to lost property. Section 485, Penal Code, requires the finder of lost property under certain circumstances 'to make reasonable and just efforts to find the owner and to restore the property to him'. This section was enacted in 1872 and was based upon section 585 of the New York Penal Code enacted in 1864, which required the finder of lost property to make 'such effort to find the owner and restore the property to him as the circumstances render reasonable and just'. Thus, for a period of approximately sixty years the obligations of the finder of lost property have been defined in this state in language where the fate of the finder (in the language of *Nash* v. *United States, supra*) 'depends upon his estimating rightly . . . some matter of degree'. ██ In this case the matter of degree

which the finder must estimate is the diligence of his effort to find the owner and to restore the container to him. Diligence is a word having a commonly accepted meaning—it is the ordinary and usual care which a reasonable man exercises in the course of his affairs. As used in the statute the words 'diligent effort' are not more uncertain or indefinite than the words 'reasonable and just efforts' used in the Penal Code sections above cited. Where diligent effort to find is required by the statute reasonable men would understand the statute to mean that they are required to pursue those lines of inquiry open to them which a prudent and reasonable man would pursue with the exercise of ordinary diligence. (*Glos* v. *Sankey*, 148 Ill. 536 [39 Am. St. Rep. 196, 23 L. R. A. 665, 36 N. E. 628, 635].) Inasmuch as the finder is not required to seek the owner unless the container is marked with a brand registered under the act, the amount of diligence required by him is negligible inasmuch as this information could be obtained by communication with the department of agriculture. The act does not require him to make personal delivery of the container to the owner nor to do more than is required generally under the provisions of sections 1864 to 1871 of the Civil Code. In so far as the act casts upon the jury the duty to determine the degree of diligence exercised in each case, the situation is not different from *People* v. *Pearne*, 118 Cal. 154 [50 Pac. 376, 377], and similar cases upholding the language of section 192, Penal Code, which defines manslaughter as 'the unlawful killing . . . without due caution and circumspection'.

 "Finally it is argued that the amendment to the General Dairy Law in 1927, whereby section 18 (b) was added to the act is unconstitutional because it is not embraced within the title. The title of the act, among other things, provides that it is enacted to prevent the manufacture and sale of unwholesome dairy products, to prevent deception and fraud in the production and sale of dairy products, to regulate the business of producing, buying and selling dairy products, and to provide for the enforcement of its provisions and the punishment of violators thereof. As we have heretofore said, we must assume that the legislature determined the necessity of the provisions of section 18 (b) for the purpose of enforcing the sanitary provisions of the General Dairy Law. In *Estate of Wellings*, 192 Cal. 506, 519 [221

Pac. 628, 634], it was said: 'The general purpose of the statute being declared, the details provided for its accomplishment will be regarded as necessary incidents.' In *Hecke* v. *Riley,* 209 Cal. 767, 775 [290 Pac. 451, 455], it was said that all that is required to be contained in the title in order to meet the constitutional requirements is a reasonably intelligent reference to the subject to which the legislation of the act is to be addressed, and that 'it is not necessary that it embrace an abstract or catalogue of its contents'. Thus, where the legislature has deemed it necessary in order to prevent the sale and delivery of unwholesome dairy products to require the branding or marking of the containers in which such products are sold or delivered, then the prohibition of the unlicensed use of such containers by those who are not entitled to use them is a reasonable regulation to that end and germane to the general subject-matter contained in the title of the act."

The judgment is affirmed.