[Civ. No. 16747. First Dist., Div. Two. July 23, 1956.]

LOUIS HIRSCH et al., Appellants, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Morris M. Grupp and Sidney Feinberg for Appellants.

Dion R. Holm, City Attorney, and George P. Agnost, Deputy City Attorney, for Respondents.

THE COURT.—This is an appeal by plaintiffs from an order refusing to grant a preliminary injunction and dissolving a temporary restraining order restraining respondents

from enforcing an ordinance of the city and county regulating sales by public outcry.

The ordinance, sections 1200 to 1214 of the police code of the city and county, contains in substance the following main provisions discussed by the parties: It prohibits the sale etc. "by public outcry addressed collectively to a group of three or more persons assembled for the purpose of conducting sales" of certain enumerated articles (jewelry, leather goods, etc.) in stores without first obtaining a permit from the chief of police, and prohibits such sales completely in the streets. (§ 1200.) Requirements for a permit include an application fee of $150, a verified application to be published both in a newspaper and on the premises for which a permit is sought, a bond of $10,000 for the indemnification of loss caused by misrepresentation or breach of warranty, a certification of good moral character and reputation by three residents. The permit shall be denied if the applicant is found to have a prior record of committing a felony or of obtaining money by false pretenses, of embezzlement or of violating an ordinance concerning sale by public outcry (§ 1201). The chief of police may issue the permit after investigating these requirements, but not to any applicant not of good character, good reputation and moral integrity, nor if the proposed business site violates a zoning ordinance. Prior violation of the regulation of merchandising by public outcry is a discretionary ground for refusal (§ 1202). The permittee must maintain an inventory of his stock with itemization of cost price, and must make quarterly sworn reports of them to the chief of police (§ 1205). The permittee must pay an annual license fee of $150 (§ 1209). Each employee engaged in merchandising by public outcry must have a permit and file a bond like the one of the permittee (§ 1210). The definition of merchandising by public outcry includes in it "selling, exposing for sale, offering for sale, or soliciting purchasers by means of audible solicitation addressed collectively to a group of three (3) or more persons," assembled for the merchandising of any of the enumerated articles (§ 1212).

Respondents contend that because the appeal is from a denial of provisional injunctive relief, as to which the trial court has a wide discretion involving the balancing of the respective equities of the parties, the discretionary denial can be upheld without reaching the constitutionality of the ordinance, which constitutes the main point in dispute between the parties. ▮ It is true that a decision on the provisional

injunctive relief will often be given without determination of the constitutional merits in advance of the trial (*French Art Cleaners* v. *State Board of Dry Cleaners*, 91 Cal.App.2d 890, 897 [206 P.2d 25]), but such is not an inflexible rule. (*Bomberger* v. *McKelvey*, 35 Cal.2d 607, 612 [220 P.2d 729].) In this case plaintiffs in their verified complaint alleged over and above grounds for invalidity of the ordinance grounds why the enforcement of the ordinance would result in irreparable injury to the business and property rights of plaintiffs. Respondents in their affidavit in opposition to application of plaintiffs for a preliminary injunction did not deny appellants' allegations with respect to said irreparable injury and did not allege any grounds for the urgency of the enforcement of the ordinance but restricted their opposition to defending the validity of the ordinance. The extensive briefs on which the matter was decided in the first instance related to that point only and respondents stated in their brief: ". . . the sole issue before the Court at this time is the constitutionality of the described ordinance." ■ On an application for a temporary injunction such allegations of the complaint when undenied are to be taken as true by the trial court and the same will then apply on appeal. (*Kold Kist, Inc.* v. *Amalgamated Meat Cutters, etc., Local No. 421,* 99 Cal.App.2d 191, 196 [221 P.2d 724].) No issue was joined as to any equities except the validity or invalidity of the ordinance and the denial of the preliminary injunction can in this case only be upheld on the ground that no sufficiently strong showing of the invalidity of the ordinance was made to justify the granting of a preliminary injunction. ■ Evidently, even when irreparable injury from the enforcement of an ordinance is undisputed no preliminary injunction of such enforcement may issue unless plaintiffs' showing raises a strong doubt as to the validity of the ordinance. (43 C.J.S. 657.) We have concluded that the grounds urged on this appeal for the invalidity of the ordinance are without merit and that therefore the order appealed from must be affirmed. ■ Our holdings as to the different proposed grounds of unconstitutionality treated herein will be binding also as to the same points on the merits, unless different circumstances are then involved.

Appellants first contend that the ordinance is violative of due process and not a valid exercise of the municipal police power because no need of such enactment is shown, because it is not in the public interest as there are only three businesses

in the city to which the ordinance would apply and because the ordinance is unreasonable.

■ It is undisputed that in general under the police power business may be regulated in a reasonable manner in aid of public safety, health, morals and welfare. The prevention of fraud, cheating and imposition is within said power (*Hart* v. *City of Beverly Hills,* 11 Cal.2d 343, 345, 349 [79 P.2d 1080] ; 11 Cal.Jur.2d 552, 561. In the cited case our Supreme Court upheld on that basis the regulation of auction sales. (To the same effect *In re West,* 75 Cal.App. 591 [243 P. 55] ; *In re Bruce,* 54 Cal.App. 280 [201 P. 789].) In *Mann's Jewelers* v. *City of San Diego,* 140 Cal.App.2d 578, 582 [295 P.2d 468], it was held that sale by outcry defined in the same manner as in the ordinance attacked herein, ''contains practically all of the incidents of an auction sale except the factor of competitive bidding, and that it involves practically all, if not all, of the evils, abuses and potential interference with the peace and general welfare of the public which is found in connection with auction sales and which justifies their regulation. The merchandising technique here is similar and involves the assemblage of persons in a crowd, the resultant limited opportunity for an examination of the goods offered for sale, the restricted opportunity to reflect on the representations made as to the quality and worth of the article, the absence of individual negotiation, and the opportunity for practicing frauds and deceits on the buying public.'' The validity of the ordinance amending an ''auction sale ordinance'' so as to define ''auction sale'' in accordance with the definition of sale by public outcry as contained in our ordinance was upheld. The Supreme Court denied a hearing.

■ It follows that sales by public outcry are under the police power subject to reasonable regulation tending to prevent fraud. Specification in the ordinance of the need for protection against a specific evil and the intention to provide said protection are not required as both will be presumed from the enactment of the ordinance (*Hart* v. *City of Beverly Hills, supra,* at p. 348; *In re Maki,* 56 Cal.App.2d 635, 640 [133 P.2d 64] ; 11 Am.Jur. 820). ■ The small number of firms allegedly subject to the regulation is irrelevant as to the question whether the regulation serves the *public* interest as required for the exercise of the police power (*Binford* v. *Boyd,* 178 Cal. 458, 461 [174 P. 56] ). The decisive point is that the ordinance serves to protect the numerous buying

public against fraud, and does not serve a private interest only.

■ With respect to the review of the reasonableness of legislation under the police power it has been said: "Primarily, in the enactment of a statute the question of its reasonableness is one for prior legislative determination, and ordinarily the legislative conclusion in that respect is regarded as final. It will be disturbed by a contrary judicial conclusion in that regard only when the questioned legislation is so manifestly unnecessary for the promotion or the preservation of the public welfare that the tribunal charged with the duty of adjudicating the matter may fittingly declare that no rational ground existed as a reason for its enactment." (*Southern Pac. Co.* v. *Railroad Com.*, 13 Cal.2d 89, 121 [87 P.2d 1055] ; 11 Cal.Jur.2d 581-582.) The same rule applies to the review of the reasonableness of municipal ordinances under the police power. (*Ex Parte Quong Wo*, 161 Cal. 220, 233 [118 P. 714].) It must be noted as to this point that with respect to the regulation of the related subject matter of auction sales, *In re West, supra*, 75 Cal.App. 591 upholds an ordinance which completely forbids the retail sale at auction of jewelry except for the bona fide liquidation of stock by a merchant retiring from business, judicial sales, sales by executors and such, a decision which shows clearly that for the purpose of preventing fraud in this field very rigorous regulation is not unreasonable.

We cannot say that the requirement of a bond of $10,000 for the indemnification of purchasers for loss suffered by misrepresentation or breach of warranty to be filed by the permittee (§ 1201, fourth) and each of his employees who merchandise by public outcry (§ 1210) cannot be defended on any reasonable ground. ■ The power of a municipality, in the exercise of its police power of regulation, to require security in the shape of a bond from its licensees in all cases where the giving of such security may fairly be held to be a reasonable requirement for the protection of the public cannot be doubted and such security may specifically serve as an indemnity fund for persons who suffered by the fraudulent conduct of business of the licensee (*In re Cardinal*, 170 Cal. 519, 524-525 [150 P. 348, L.R.A. 1915F 850]). The amount of the bond is normally a question of economics for the legislative body (*Moore* v. *Webb*, 219 Cal. 304, 309 [26 P.2d 22, 89 A.L.R. 925]). No showing has been made that the amount required is necessarily disproportionate

to the damage that can be caused in the business regulated or to security required in other regulated business. The requirement of a bond in the same amount for each employee who engaged in merchandising by public outcry can reasonably be defended on the ground that the number of employees so engaged can be considered a measure of the business potential and therefore of the potential of harm.

 The requirement of the keeping of records, inventory with itemization of cost price, and the making of quarterly reports of an inventory and itemization of purchases to the chief of police (§ 1205) may well serve a good purpose in a regulation aimed at preventing fraud on purchasers and at giving them means of redress. The right to require persons engaged in particular business to make reports to officials is in general recognized (11 Am.Jur. 1049). *In re West, supra,* 75 Cal.App. at page 604, 605 upholds it with respect to closing out sales by auction, a related field. Appellants did not show in their verified complaint or otherwise that the requirements as to keeping of records and giving information contained in this ordinance impose an unbearable burden on their business. These provisions complained of are not unconstitutional because of unreasonableness.

 It is next contended that the ordinance is void as violating due process because of the ambiguity and vagueness of the description of the subject matter regulated. Section 1200 reads: ''Sales by Public Outcry Regulated. It shall be unlawful for any person, firm or corporation, to sell, offer for sale, expose for sale or solicit offers to purchase any jewelry, watches, clocks, binoculars, optical instruments, cameras, luggage, leather goods, plastic goods, imitation leather goods, cigarette cases, compacts, mechanical pens and pencils, precious stones, semi-precious stones, gold, silver, platinum or plated ware, by public outcry addressed collectively to a group of three or more persons assembled for the purpose of conducting sales of any of the aforesaid articles in any enclosed store or premises in the City and County of San Francisco, without first obtaining a permit from the Chief of Police. It shall be unlawful to merchandise any of the aforesaid articles by means of public outcry on any of the streets or sidewalks of the City and County of San Francisco, and the Chief of Police shall not issue a license for such purpose.'' The expression ''by public outcry addressed collectively to a group

of three or more persons assembled for the purpose of conducting sales of any of the aforesaid articles'' is nearly identical with the definition used in the ordinance upheld in *Mann's Jewelers* v. *City of San Diego, supra.* Section 1212 reads: ''Definition of Merchandising by Public Outcry. Without limiting the generality of the term 'merchandising by public outcry,' such activity shall include selling, exposing for sale, offering for sale, or soliciting purchasers by means of audible solicitation addressed collectively to a group of three (3) or more persons, which said group has been assembled for the purpose of merchandising any of the articles set forth in Section 1200.'' Appellants direct their criticisms specifically to the allegedly unclear meaning of the phrases ''addressed collectively to a group of three or more persons assembled for the purpose of selling'' (or ''merchandising'') the articles, and ''by audible solicitations.'' The contentions are without merit. ■ A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language, but only if the purpose or intent of the Legislature cannot be ascertained. In this respect the courts must endeavor, if possible, to view the statute from the standpoint of the reasonable man who might be subject to its terms. (*Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668, 676-677 [8 P.2d 140, 80 A.L.R. 1217].) These rules are applicable in reviewing the alleged ambiguity of the municipal ordinance here involved. ■ A reasonable consideration of the sections quoted must inform appellants of the legislative intent to regulate the sale by mass solicitation as distinguished from individualized sales negotiation and to regulate audible solicitation only as distinguished from visual solicitation by means of printed signs and such. The number of three or more persons required to form the group addressed draws a sufficiently clear borderline between mass solicitation and individual negotiation. The ordinance gives adequate notice of the practices which the municipality considers dangerous and in need of regulation and its social purpose may then not be thwarted by quibbling about separate terms. An example of such quibbling to be avoided is appellants' argument as to the use of the word ''month'' in the last clause of section 1205 instead of the word ''months'' evidently intended.

■ Appellants' contention that the ordinance is void as violating the constitutional freedom of speech is not well taken. The restriction on the freedom of speech is here

an incidental result only of the regulation under the police power of the business involved in the interest of prevention of fraud. "The right of free speech protected by the federal and state constitutional guaranties is not an absolute right which carries with it into businesses and professions total immunity from regulation in the performance of acts as to which speech is a mere incident or means of accomplishment. It was not intended that a right to speak for the purpose of profit may be created to the derogation of the police power of state or city." (*In re Porterfield,* 28 Cal.2d 91, 101 [168 P.2d 706, 167 A.L.R. 675].) ▮ Nevertheless the freedom of speech is not wholly inapplicable to business or economic activity. "In the last analysis the extent of permissible regulation of business or economic activity depends upon the balancing of social interests and the facts of any given case." (*In re Porterfield, supra,* at p. 102.) Under the facts of this case the balancing of social interests presents no difficulty. The speech, the freedom of which is here to some extent restricted, is directed solely at the obtaining of profit without any additional political, social, economic or religious importance, subjects to which the constitutional guaranty of freedom of speech primarily relates. (*In re Porterfield, supra,* at p. 101; in the Porterfield case itself the fact that the regulation comprehended solicitation for membership of trade unions gave the guaranty of freedom of speech added importance.) On the other hand regulation of the business here involved has been recognized as justified and reasonable for the purpose of obviating the evils and abuses to which such business is subject. (*Mann's Jewelers* v. *City of San Diego, supra.*) It is a clear case in which the regulating power of the municipality must prevail. (See also *Breard* v. *City of Alexandria, La.,* 341 U.S. 622, 631 et seq. [71 S.Ct. 920, 95 L.Ed. 1233].) Cases relied on by appellants are distinguishable because the social interests there balanced were different.

▮ Next appellants contend that the ordinance denies plaintiffs equal privileges and immunities in violation of article 1, section 21 of the state Constitution and equal protection of the law in violation of the federal Constitution because the classifications it contains can allegedly not reasonably be sustained. "The Legislature can make reasonable classification, i.e. classifications which have a substantial relation to a legitimate object to be accomplished. . . . The legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly

reach. Dealing with practical exigencies, the legislature may be guided by experience. . . . It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. (Citations.) When the classification made by the Legislature is questioned, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of fact is presumed. . . .'' (*Lelande* v. *Lowery*, 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109].) In this case experience may have taught the municipal legislature that the evils against which the ordinance is directed appeared most clearly with respect to the articles enumerated. *In re West, supra*, 75 Cal.App. 591 upheld an ordinance regulating sale at public auction restricted to platinum, gold, silver, or plated ware, precious stones, semiprecious stones, watches or other jewelry against the objection of unreasonable classification. The reasoning of that case (p. 597 et seq.) is largely applicable here and need not be repeated. The articles as to which the necessity of regulation most clearly appeared need not be so similar that they can be described by one word like jewelry. An enumeration of diverse articles as in our ordinance was used also in the auction sale ordinance upheld in *City of San Antonio* v. *South Trunk Co.*, (Tex.Civ.App.) 13 S.W.2d 401.

We have treated earlier the reasonableness of the number of three persons in the group addressed as the minimum standard for the mass solicitation here regulated. We are not convinced that a correct construction of the ordinance in accordance with its purpose would make it applicable to the addressing of three acquainted persons who together wish to make a purchase, as contended by appellants. This point does then not present a question of reasonableness of classification, but one of ambiguity. That legislation is susceptible of different interpretations and that there may be doubts as to its construction is no ground for invalidity (*Pacific Coast Dairy* v. *Police Court, supra*, 214 Cal. at p. 676).

We do not find any uncertainty in the class of persons to whom the denial of a permit is made mandatory by section 1201, subdivision 5, of the ordinance, to wit those who ''shall be found to have a prior criminal record of committing any felony, theft, obtaining money or property by false pretenses, embezzlement . . .'' The only record of the *commission* of such an offense by the applicant is a record of conviction or punishment. Records of arrest, indictment or acquittal

suggested by appellants are not records of *commission* of the felony by the applicant.

 Conviction of a felony as a classification excluding the granting of a license for a business or profession for which a license is required does not seem unreasonable as it can be considered an indication of a disqualifying defect in moral character. It is a ground for refusal of a license for many professions regulated in the Business and Professions Code for instance, Barbers (§ 6576 et seq.) and Dry Cleaners (§ 9540.3). There is no requirement that the conviction be restricted to that class of felonies which is specially related to the profession licensed. Appellants do not cite any authority which holds that good moral character or absence of conviction of a felony are not permissible licensing requirements. They seem reasonable, certainly with respect to a business considered subject to the danger of fraud.

 Finally appellants contend that the ordinance contains an unconstitutional delegation of legislative power to an administrative officer because section 1202 of the ordinance provides: "Investigation by Chief of Police. Upon receipt of said application, as provided in the preceding section, the Chief of Police shall investigate the character and business of the applicant, and the location at which said applicant proposes to engage in the business as stated in said application. Upon compliance with the requirements set forth in Section 1201, the Chief of Police may issue a permit for expiration one year from the date of issuance, provided, however, that no permit may be issued to any applicant not of good character, good reputation and moral integrity; nor to any applicant proposing to conduct business within a district not so permitted by the general zoning regulations of the City Planning Code of the City and County of San Francisco. The Chief of Police in his discretion may refuse to issue a permit to any person, firm, or corporation who has heretofore violated any provision of this Code regulating merchandising by public outcry or to any applicant under charge thereof. Notwithstanding such discretion in the Chief of Police, where a revocation of permit has occurred, the Chief of Police may not grant a new permit to any such permittee for a period of two (2) years following such revocation. The Chief of Police shall forward said permit to the Tax Collector for delivery to the permittee upon the payment of the license fee hereinafter provided."

It is contended that this provision does not lay down any

standard for any duty to grant a permit and no sufficient standard for discretionary granting because "good character, good reputation and moral integrity" are too subjective to be of value. It does not follow from the fact that the word "may" is used, that the chief of police has discretion to withhold a license if the applicant fulfills all the requirements stated by the above section of the ordinance. In *Gospel Army* v. *City of Los Angeles,* 27 Cal.2d 232 [163 P.2d 704] a city ordinance requiring licenses for the business of junk or second hand dealer contained the provisions that after investigation the board *may* issue a permit to the applicant (p. 235). The court held that the standards prescribed were adequate (p. 236) citing among other cases *In re Holmes,* 187 Cal. 640, 646 [203 P. 398] where it is said:

"The petitioner's next contention is that the investment of the board of police commissioners with the general and unqualified power to grant or refuse permits to dealers in second-hand merchandise, as contained in the provisions of the charter above quoted, is unconstitutional as an attempt to confer arbitrary power upon that body to grant or refuse permits at their whim or pleasure. The best answer to that contention is to be found in Dillon on Municipal Corporations (5th ed.), page 937, wherein the learned author says: " 'Many cases are to be found sustaining ordinances prohibiting acts, or even the following of trades or occupations, without procuring permits which may be issued at the discretion of the council, mayor, or some other city officer or department, and the fact that the dispensing power was apparently conferred without restraint or qualification has been regarded as arising merely from the difficulty of defining in advance upon what conditions the permits shall be given or the dispensing power exercised. It has been said that it is not to be assumed that the council or officer, in exercising the dispensing power, will act arbitrarily, or otherwise than in the exercise of a sound discretion.' "

It is expressly held in the Gospel Army case, *supra,* that the requirement of good character and reputation does not "vest arbitrary power in the administrative board in authorizing it to withhold a license if it is not satisfied that the applicant is of good character and reputation. Such a requirement is common in statutes regulating admission to professions and occupations . . ." (27 Cal.2d at p. 248.) The addition of "moral integrity" in our provision does not have the effect of making the requirement more indefinite. If there is any

difference between "good character" and "moral integrity," the latter seems the narrower term, with possibly somewhat more stress on the honesty important in business relations. In *In re Porterfield, supra,* 28 Cal.2d 111 et seq. on which appellants rely, the ordinance gave as one of the licensing requirements that "the city council is satisfied that said applicant . . . will not resort to force, violence, threat, menace, coercion, intimidation or corrupt means in his proposed work of solicitation." The holding of the court that the standard is entirely subjective is based among other things on the fact that each council member is left to determine in his own mind what is "likely" to be the future conduct of the applicant. Moreover, *In re Porterfield, supra,* is distinguished by the fact that constitutional guaranties were there of special importance because the applicant was a solicitor for labor union membership. The case adopts the following from an annotation: "In the main, it may be said that the validity of the grant of discretion depends largely upon the nature of the business . . . with respect to which it is to be exercised . . ." (*In re Porterfield, supra,* at p. 110-111.) Our holding that the business here involved is of a kind as to which the constitutional guaranties are of no special importance whereas a strict regulation in the interest of preventing fraud is justified is decisive of the freedom to grant discretion as well as of the restriction of the freedom of speech.

Order affirmed.