[No. 27017. Department One. June 22, 1938.]

PETROLEUM LEASE PROPERTIES COMPANY, *Appellant,* v. HARRY C. HUSE, *as Director of Licenses, Respondent.*[1]

[1]Reported in 80 P. (2d) 774.

Will G. Beardslee, for appellant.

The Attorney General, W. A. Toner and John E. Belcher, Assistants, for respondent.

GERAGHTY, J.—This action was instituted by the plaintiff, under the declaratory judgment act (Rem. Rev. Stat. (Sup.), § 784-1 [P. C. § 8108-21] et seq.), to have the court pass upon the validity of chapter 182, Laws of 1937, p. 711, Rem. Rev. Stat. (Sup.), §§ 5853-2, 5853-22 [P. C. §§ 482-5, 482-26], amending chapter 69, Laws of 1923, p. 207, Rem. Rev. Stat., § 5853-1 [P. C. § 482-5] et seq., known as the securities act, providing for the regulation and supervision of the issuance and sale of certain securities as defined in the act.

In its second amended complaint, the plaintiff alleged that it is the owner and in possession of oil and gas leases on about five hundred acres of land in Yakima and Benton counties; that it is desirous of subdividing these leasehold interests for the purpose of making outright sales of smaller units of them; that the defendant, in his official capacity, assuming to act under color and authority vested in him by the securities act, has threatened to and, unless restrained from so doing, will interfere with and prevent plaintiff from selling its leases without first having obtained a permit under the securities act; that such interference will cause plain-

tiff to suffer irreparable loss and damage; and that it has no plain, speedy or adequate remedy at law.

It is alleged that, upon the sale of the leases, complete title to all interest in them passes to the purchaser, and all relationship between the plaintiff and the purchaser is terminated; that the plaintiff is not engaged in drilling, developing, or in any manner supervising or managing the interests of the purchaser after consummation of the sale, the purchaser being free to develop his leasehold interest in such manner as he may deem fit, and to take possession immediately upon entering into the contract.

It is alleged that the securities act, in so far as it pertains to the regulation of the sale of oil and gas leases, is invalid and unconstitutional, in that the title to the amendatory act of 1937 does not contain any notice of the legislative purpose to bring oil and gas leases within the purview of the act.

It is alleged that the act is further invalid and unconstitutional on the ground that the securities act deprives the plaintiff of its property without due process of law, in that, by the provisions of the act, the plaintiff is denied the right to appeal to any court or judicial body for relief from the unauthorized acts of the defendant.

The specific relief sought is the entry of a decree that the securities act, as amended, is invalid, and that the plaintiff is not required to secure the permit provided by the act.

A demurrer, interposed by the defendant, was sustained by the court, and, upon the plaintiff's declination to plead further, the action was dismissed. The plaintiff appeals.

The appellant's first and principal contention is that the title of the 1937 amendatory act is insufficient under § 19 of Art. II of the state constitution, in that it

does not evidence a purpose to include oil and gas leases in the body of the act or within the definition of the term "security" as therein contained.

At its 1923 session, the legislature enacted chapter 69, known as the securities act. In § 2, p. 207, of the act, the word "security" was defined broadly as including shares or interests into which the capital, capital stock, or property of companies, or rights of stockholders or members thereof, are divided; promissory notes, mortgages, bonds, debentures, and other evidences of indebtedness; any instruments issued, offered or sold to the public by any company evidencing or representing any right to participate or share in the profits or earnings or in the distribution of assets; and bonds or other evidences of indebtedness issued by governments or their political subdivisions other than those issued by the state of Washington and its political subdivisions. The definition did not include oil or gas leases, nor was there any reference to them in the act.

The act was amended at the 1935 session of the legislature, chapter 97, p. 234, in matters not material to the present controversy.

At its 1937 session, the legislature enacted chapter 182, p. 711, entitled:

"AN ACT providing for the regulation and supervision of the issuance and sale of securities to prevent fraud in the sale thereof, amending section 2, chapter 69, Laws of 1923, as amended by section 1, chapter 97, Laws of 1935 (section 5853-2, Remington's Revised Statutes), and section 22, chapter 69, Laws of 1923 (section 5853-22, Remington's Revised Statutes), and declaring an emergency."

In the body of the act, the definition of the word "security" was amended to include

"Oil or gas leases or any assignment, partial assignment, agreement to assignment, or other instruments in connection therewith."

It is seen that the title recites that the amendatory act is "for the regulation and supervision of the issuance and sale of securities," and the amendment of certain sections of the securities act. The title gives no notice that there is to be embodied in the amendment the regulation of any matter not embraced within the meaning of the word "security" as that term is commonly understood and defined by standard dictionaries, as well as by the original securities act itself. That a gas or oil lease is not a "security" as ordinarily understood, or as defined in the original act, is self-evident.

It has been held that, if gas and oil are in place beneath the land, they are essentially a part of the realty and their grant, while in that condition, is the grant of an interest in the realty, and that their conveyance, while in place, is consequently the conveyance of an interest in the realty. *Texas Co. v. Daugherty*, 107 Tex. 226, 176 S. W. 717.

In *Callahan v. Martin*, 3 Cal. (2d) 110, 43 P. (2d) 788, 794, 101 A. L. R. 871, the supreme court of California, in discussing the nature of these leases, says:

"Under the usual oil and gas lease the owner-lessor transfers to his lessee his right to drill for and produce oil and other substances. The rights of the lessee present a clear case of a profit *a prendre* in gross, a right to remove a part of the substance of the land. If the oil and gas lessee is not granted exclusive possession of the surface by the terms of the lease, he has nevertheless a right to such possession as is necessary and convenient for the exercise of the profit, which, in fact, may preclude any other surface possession. This profit *a prendre* vests in the lessee an incorporeal hereditament, a present estate, an interest in the land, which is a chattel real if it is to endure for years."

Section 19 of Art. II of the state constitution is as follows:

"No bill shall embrace more than one subject, and that shall be expressed in the title."

The object of this constitutional provision is stated by Judge Cooley, in a passage often quoted by this and other courts, to be:

" . . . *first* to prevent *hodge-podge* or 'log-rolling' legislation; *second,* to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, *third,* to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." 1 Cooley's Constitutional Limitations (8th ed.), 296.

In discussing the mischief intended to be remedied by this provision, it is said in 1 Lewis' Sutherland Statutory Construction (2d.ed.), 184, § 111:

"The failure to indicate in the title of the bill the object intended to be accomplished by the legislation often resulted in members voting ignorantly for measures which they would not knowingly have approved. And not only were legislators thus misled, but the public also; so that legislative provisions were stealthily pushed through in the closing hours of a session, which, having no merit to commend them, would have been made odious by popular discussion and remonstrance if their pendency had been seasonably announced. The constitutional clause under discussion is intended to correct these evils; to prevent such corrupting aggregations of incongruous measures by confining each act to one subject or object; to prevent surprise and inadvertence by requiring that subject or object to be expressed in the title."

But, while the courts enforced this constitutional restriction in all cases falling within the mischief intended to be remedied thereby, they agree that it is no less desirable to avoid embarrassing the legislature in the exercise of its powers by an overly technical and restrictive construction. As said by Judge Thayer, of

the eighth circuit court of appeals, in *South St. Paul v. Lamprecht Bros. Co.*, 88 Fed. 449, 451:

"This provision of the constitution ought not to receive a narrow or technical construction, which will embarrass legislation by making laws unnecessarily restrictive in their scope and operation; but, like all provisions of the organic law, it should be fairly and liberally interpreted and enforced, so that it will serve to prevent the abuses at which it was aimed, without placing unnecessary restraints upon legislative action."

This rule of liberal construction has always obtained in this jurisdiction.

"This court has uniformly held that the title need not be an index of the act, but is sufficient if it so indicates its substance and scope as to put a person of ordinary intelligence upon notice and inquiry as to its provisions." *Shortall v. Puget Sound Bridge etc. Co.*, 45 Wash. 290, 294, 88 Pac. 212, 122 Am. St. 899.

Now no one, whether of ordinary or superior intelligence, could discover from the title of the amendatory act that it was intended to bring oil or gas leases within the operation of the securities act by defining them to be securities.

That the legislature possessed the power to protect the public against fraud in the sale and exploitation of oil and gas leases cannot be questioned, and it may be assumed that such legislation was warranted by existing conditions. It may be conceded, also, that, while these leases are not securities in the ordinary accepted meaning of the term, the legislature could, by definition, bring them within the operation of the act, provided the purpose to do so was indicated in the title.

It is the contention of the respondent that the constitutional requirement was met by amendment of the definition in the body of the act. To concede this principle would render the provision wholly nugatory. A similar question arose in *Commonwealth v. Kebort*, 212 Pa. 289, 291, 61 Atl. 895, where the legislature at-

tempted, by definition, to bring within the scope of an act a subject not covered by the title. Holding this could not be done, the court said:

"The right of the legislature to define the terms it uses is beyond question and the meaning it so attaches is mandatory upon the courts in the construction of the statute. But where such meaning is given to the words describing the subject of the act, and is not that which attaches to them in the common understanding, the constitution requires that the title shall express such special meaning with at least sufficient clearness to put readers on inquiry as to the full provisions."

The same rule is stated in 59 C. J. 810:

"Words in a title must be taken in their common and ordinary meanings, and the legislature cannot in the body of an act impose another or unusual meaning upon a term used in the title without disclosing such special meaning therein."

While we believe that no improper motive prompted the method followed in the enactment of the legislation here challenged, and that the object sought to be accomplished was within legislative competence, nevertheless the constitutional principle involved is too important to be ignored. The approval by the court of the method of amending laws followed in this instance would establish a precedent tending to weaken the guards erected by the constitution against improper or improvident legislation.

Our conclusion is that the amendatory law of 1937, chapter 182, is unconstitutional in so far as it attempts to bring gas and oil leases within the purview of the securities act.

The judgment of the superior court is reversed, and the cause is remanded, with direction to enter a decree in accordance with the views expressed in this opinion.

HOLCOMB, MAIN, ROBINSON, and SIMPSON, JJ., concur.