[Civ. No. 29934. Second Dist., Div. Five. Nov. 21, 1967.]

HAROLD J. POWERS, as Director, etc., Plaintiff and Appellant, v. SYDNEY N. FLOERSHEIM et al., Defendants and Appellants.

Thomas C. Lynch, Attorney General, and Warren H. Deering, Deputy Attorney General, for Plaintiff and Appellant.

Murray M. Chotiner for Defendants and Appellants.

STEPHENS, J.—Plaintiff Harold J. Powers, as Director of the Department of Professional and Vocational Standards of the State of California, brought suit against defendants Sydney N. Floersheim (also known as S. Floersheim and as Sydney Floersheim), Elaine A. Floersheim, Paul Price (also known as Paul Pink), Maxine Pink, Herman Winters, and Ralph Schneider. The complaint alleges that none of the defendants is licensed as a collection agency, as required by Business and Professions Code, section 6853, and that they are in violation of section 6870 of that code. Injunctive relief is sought to restrain defendants from engaging in business as

a collection agency until they are licensed to do so, pursuant to the Collection Agency Act. (Bus. & Prof. Code, § 6850 et seq.)[1] The two pertinent sections around which this case developed are sections 6852[2] and 6853.[3]

Plaintiff contends that the sale of certain forms by the defendant, both alone and in connection with certain mailing and forwarding services rendered, constituted the business of a collection agency for which defendants were required to obtain a collection agency license, but did not. Defendants consented to a limited injunction against the rendition of certain addressing services, but otherwise defendants resisted plaintiff's action. Defendants counterclaimed for declaratory relief and for injunctive relief against official harassment of their customers and interference with their business.

During the early course of the trial, defendants filed with the court a written consent to a permanent injunction in regard to some of their activities, as follows: "Defendants consent to a permanent injunction prohibiting them from, directly or indirectly, or by any manner or means whatsoever: Soliciting creditors to send unto the defendants or any other persons, any names, addresses, and amounts owing or claimed to be owing to such creditor by a debtor for the defendants to fill in the blanks on forms supplied theretofore or thereafter with the amount of the claim, the creditor's name and address, the name and address of the debtor, and then inserting the completed form in an envelope with the debtor's name and address appearing through the window thereof and sealing the said envelopes; all or any part of the foregoing being done for a fee or charge or sum, other than as an employee of such creditor, paid by the creditor to the persons, or any thereof, enjoined."

The trial court entered detailed findings of fact and conclusions of law and then decreed that the forms sold by defendants, with certain services included as part of the purchase, together comprised a collection system, scheme, and device

---

[1] All section references herein are to the Business and Professions Code unless otherwise indicated.

[2] Section 6852: "'Collection agency' means and includes all persons engaging, directly or indirectly and as a primary or secondary object, business, or pursuit, in soliciting claims for collection or in the collection of claims owed or due or asserted to be owed or due to another."

[3] Section 6853: "Any person using a fictitious name in collecting its own claims with the intention of conveying to the debtor that a third party has been employed and any person, who sells, or offers to sell, forms represented to be a collection system, scheme, or device, intended or calculated to be used to collect claims is a collection agency and is subject to the provisions of this chapter."

within the meaning of section 6853, and thus defendants are subject to the provisions of the Collection Agency Act and are required to be licensed thereunder. With the conclusion that defendants sold and offered for sale forms which they represented to be collection systems, schemes, and devices, we agree. The court stated that defendants would not be subject to the licensing requirements if no services were offered as part of the sale of forms. With this we do not agree. The court further enjoined defendants from using certain forms which the court found objectionable due to the use of fictitious names thereon as found by the court. We do not find it necessary to limit the injunction, though we concur in this specific finding of objectionable practice.

On the counterclaim, the court found that plaintiff had warned defendants' customers not to use forms sold by defendants, and threatened such customers with disciplinary proceedings, with the result that such customers refused to order or use forms supplied by defendants, or to pay defendants for forms already purchased from them. The court enjoined plaintiff from taking or threatening to take any action against defendants or any other person by reason only of the mere fact of the sale, purchase, or use of defendants' forms which do not violate other provisions of the injunction or of law.

## Facts

Defendant Sidney Floersheim owns the S. Floersheim Sales Company located at 7319 Beverly Boulevard, Los Angeles, which as of the time of the trial (February 1964) had been inactive for three or four years. Defendant Elaine Floersheim, the wife of Floersheim, owns the Floersheim Sales Company, also located in the same offices at 7319 Beverly Boulevard, Los Angeles. She also owns the National Research Company, the business address of which is 748 Washington Building, Washington, D.C. Mail for the National Research Company is also accepted at 7319 Beverly Boulevard, Los Angeles. Defendants Paul Price (also known as Paul Pink), Herman Winters, and Ralph Schneider are salesmen of Floersheim Sales Company. Maxine Pink is a part time clerical worker for Floersheim Sales Company.

Defendant Elaine Floersheim does not take an active interest in the affairs of National Research Company. The affairs of that company are managed by a manager in Washington, D.C., under the supervision of Sidney Floersheim in Los Angeles. S. Floersheim does not own any interest in this com-

pany, but does oversee the company and determines who will be employed. National Research Company engages only in the business of servicing the forms hereinafter mentioned, and does not render services to any business other than Floersheim Sales Company. "Payment Demand," "Claimant's Information Questionnaire," and "Current Employment Records" are names used by National Research Company to receive mail at its Washington, D.C. address.

Floersheim Sales Company is the sales agent for, and receives compensation from, National Research Company. S. Floersheim is the manager of Floersheim Sales Company. While Floersheim Sales Company is engaged in the sale of forms, it is not engaged in any type of printing business, except that on the various forms it sells, the company does print the numbers thereon and inserts certain information thereon, depending upon the states into which the forms will be sent.

None of the defendants is licensed as a collection agency. Until enjoined, defendants were engaged in the sale to merchants and other businesses in this state of certain printed forms which they represent would "collect" delinquent obligations from debtors in this state.

Summarized in brief, the forms sold were mainly of two types: "payment demand" forms and "skip tracing" forms. The former are primarily designed to collect delinquent accounts, and the latter are designed to locate the delinquent debtor and his assets so that a demand can be made upon him.

In conjunction with the sale of forms, defendants performed certain services for the creditor. After purchasing the forms, the purchaser fills in the name and address of the debtor and then forwards the forms in bulk to the National Research Company in Washington. D.C., which will then seal and meter the envelopes and mail them to the debtors. The various customers pay the costs of this postage. The forms, under names such as "Payment Demand" and "Current Employment Records," bear defendants' return address of "748 Washington Building, Washington. D.C."; or they may bear the return address alone. All returned forms are sorted and returned to the individual creditor.

Defendants or their agents mailed to various creditors within the state brochures describing their forms and the services rendered. These brochures explained the effectiveness of the forms and services in collecting delinquent debts.

Defendants on appeal raise four claimed errors committed by the trial court: (1) that the question of whether defendants' operations require a collection agency license has been decided against plaintiff by the prior judgment in *People* ex rel. *Mosk* v. *National Research Co.*, 201 Cal.App.2d 765 [20 Cal.Rptr. 516], which is res judicata; (2) that section 6853 is invalid, being in contravention of the entitling requirements of the state Constitution; (3) that the defendants' rendition of incidental mailing and forwarding services in connection with the sale of forms does not extend the coverage of section 6853, which the trial court found to be inapplicable to the mere sale of forms if validly construed; and (4) that the use of the particular forms which the trial court found objectionable does not render section 6853 applicable to defendants' operations.

Plaintiff in his appeal raises two claimed errors: (a) the court's judgment permits defendants to sell, and creditors to use, a system or scheme of collection forms in this state directly in violation of section 6853; and (b) the court's injunctive order against the Director prevents the Director from carrying out his statutory duty as to (1) the enforcement of sections 6852, 6853, and 6870 dealing with unlicensed collection agencies; (2) the enforcement of section 6947 and the regulations thereunder, which prohibit licensed collection agencies from using certain types of forms and letters and from engaging in unfair, misleading practices or illegal means of collection; and (3) the institution of disciplinary action, pursuant to section 6930, against licensed collection agencies for violation of section 6947 and the regulations thereunder.

### Collateral Estoppel

Defendants contend that a prior suit[4] between the state and the defendants conclusively decided that defendants' operations do not require a collection agency license. In the prior action, an injunction was granted against National Research Company for certain deceptive practices, but the court concluded "that the plaintiff is not entitled to an injunction based on the failure of the defendants to be licensed as . . . a collection agency."

The aspect of the res judicata doctrine which defendants invoke is collateral estoppel. Where an issue of fact essential to the judgment is actually litigated and necessarily

[4]*People* ex rel. *Mosk* v. *National Research Co.*, 201 Cal.App.2d 765 [20 Cal.Rptr. 516] (No. 118,574 of the Superior Court of the State of California, for the County of Sacramento).

decided by a valid final judgment, the determination is conclusive between the parties and their privies. (*Cromwell* v. *County of Sac* (1876) 94 U.S. 351 [24 L.Ed. 195]; *Todhunter* v. *Smith* (1934) 219 Cal. 690, 694-695 [28 P.2d 916].) Collateral estoppel is not applicable to the decision of a mixed question of fact and law, particularly if there has been an intervening change in the law or a doctrinal change. (*Commissioner of Int. Rev.* v. *Sunnen* (1947) 333 US 591, 600-601 [92 L.Ed. 898, 907, 68 S.Ct. 715].) The prior action upon which defendants rely to support their res judicata claim was an action brought by the state against the defendants to restrain defendants from allegedly violating the Collection Agency Act. The statute under which the action was brought was substantially changed after the former action concluded. Section 6872,[5] upon which the present action was based, was added in 1961 to the Business and Professions Code. The 1961 statute eliminated the requirements of the former law that the state must allege and prove irreparable injury and lack of an adequate legal remedy as a condition of relief.

The question whether the defendants fall within the present statute was neither litigated nor decided in the prior case. The issues decided in that case are not identical to the issues presented in this case. The applicability of the former collection agency law to defendants in the prior litigation presented a mixed question of fact and law. A prior determination of such a question does not collaterally estop the state from litigating the same question in the new setting following a change in the applicable law.

The trial court correctly concluded that the prior action did not collaterally estop litigation of this issue in this case.

*Constitutional Requirements As To Entitling*

In Conclusions of Law, paragraph VI, the trial court found that neither defendants' selling nor offering to sell, printing

---

[5]Section 6872: ''The superior court in and for the county wherein any person carries on, or attempts to carry on, business as a collection agency without first having obtained a license pursuant to this chapter, or carries on such business after the revocation or expiration of any license or during the period of suspension of any license, may, on application of the director, issue an injunction or other appropriate order restraining such conduct.

''The proceedings under this section shall be governed by Chapter 3 (commencing with § 525) of Title 7 of Part 2 of the Code of Civil Procedure, except that no undertaking shall be required and the director shall not be required to allege facts necessary to show or tending to show lack of an adequate remedy at law or irreparable injury [Added by Stats. 1961 ch. 1403 § 1.].''

or causing to be printed, nor composing or causing to be composed, the forms herein involved, or similar forms, was within the subject of the Collection Agency Act. The court concluded, rather, that it was the selling of the forms and, as a part of the sale, agreeing to and performing the mail forwarding and addressing services, as found by the court, which together brought defendants' activities within the Collection Agency Act.

Defendants urge that the selling of forms and the providing of addressing and forwarding services are not within the "natural and obvious" meaning of the words "collection agency," and thus the inclusion of these acts within the purview of the statute is in violation of article IV, section 9,[6] of the state Constitution.

■ When a title specifically shows that within the act the basic terms will be defined, it is considered to be broad or comprehensive in nature and liberally interpreted as long as some rational unity exists between the general subject matter and the title. Such is not the case where a title gives no indication that basic terms will be defined. In this latter case, the title is said to be narrow in scope and will be more closely construed. ■ In the titles involved in the present case, it is clear that in 1941, when section 6853 was added, the reference in the title to the 1927 title[7] showed that the basic terms would be defined within the body of the act. In 1943, when the act was transferred to the Business and Professions Code, the title demonstrated that the "law regulating and licensing collection agencies" was being added to the code in substantially its then present form. The part under discussion here was not amended by the 1943 act.

The heading of the 1927 act, which was referred to in the heading of each amendment, was sufficiently clear to advise that the term "collection agency" would be given a new and broad definition in the body of the act. Defendants have in no way shown any prejudice resulting from the titles of the acts in question. The type of activity which section 6853 seeks to regulate is not so foreign from the business of a collection agency (as defendants would have us believe) that it cannot

---

[6]California Constitution, article IV, section 9: "A statute shall embrace but one subject, which shall be expressed in its title. If a statute embraces a subject not expressed in its title, only the part not expressed is void." (Adopted Nov. 8, 1966; formerly art. IV, § 24.)

[7]"An Act to define collection agencies; to provide for the regulation, bonding, supervision and licenisng thereof; to provide for the enforcement of said act and penalties for the violation thereof."

be said that its inclusion within the act contravenes the entitling requirements set forth in article IV, section 9. (See *Metropolitan Water Dist.* v. *Marquardt,* 59 Cal.2d 159 [28 Cal.Rptr. 724, 379 P.2d 28]; Cf. *Petroleum Lease Properties Co.* v. *Huse,* 195 Wash. 254 [80 P.2d 774] and *DeCano* v. *State,* 7 Wn.2d 613 [110 P.2d 627] (illustrations of narrow titles) with *State* v. *Department of Public Service,* 1 Wn.2d 102 [95 P.2d 1007] (illustration of broad title).]

### *Coverage of Sections 6852 and 6853*

Sections 6852 and 6853 define those activities that bring a person within the definition of ''collection agency'' for purposes of the statutory framework. Section 6852 is in two parts. The first covers those who solicit claims to collect, and the second covers those who actually do collect the claims of another. The services rendered in connection with the forms sold may well have brought the defendants within the group covered by this second portion of the section. This determination, however, is not necessary to resolve the issue before us.

Section 6853 is similarly divided into two parts. The first part deals with those using a fictitious name in the collection of their own debt, and is not involved in the case before us. The second part deals with those selling forms represented to be a collection system, scheme, or device used to collect claims. It is the coverage of this second part which presents the greatest difficulty.

The trial court felt that a literal reading of the section would bring defendants within its bounds.[8] With this we agree. But it also felt that such a reading would present grave constitutional problems.[9] With this we do not agree. Once the constitutional difficulties are met, then, it is our role to apply the statute as written. If the coverage seems broader than necessary or desirable, this is a problem that is more properly

[8]''II. None of the provisions of the Collection Agency Act (Bus. & Prof. Code, §§ 6850 to 6956) are applicable to the cause here-involved other than a literal reading of Section 6853.''

[9]''VII. If Section 6853 of the Business and Profesisons Code be construed to require a person who sells or offers to sell Forms without offering, or agreeing to perform or performing any services whatsoever in connection therewith; said Forms collectively in a group, constituting a set plan of operation or procedures ('system'), or a systematic plan or program ('scheme'), or a method or project ('device') intended or calculated to be used by *bona fide* creditors to attempt to collect the debts owing unto them from their debtors to be licensed under the Collection Agency Act, would render said Section void and unconstitutional, as in contravention of the rights of Defendants under the First and Fourteenth Amendments to the Constitution of the United States, and Article I, Sections 1 and 9 of the California Constitution.''

addressed to the Legislature. We turn our attention, then, to the constitutional points raised.

It is first contended that spreading the act to mere sellers of forms used in collecting debts would infringe upon freedom of speech. No opinion, thought expression, or other form of information is contained in the forms under discussion. They are merely tools of a trade, much as a hammer is a tool of the trade of carpentry. The purchaser seeks no information from the form, and the designer seeks to convey none. Assuming *arguendo* that forms may be construed to be a form of speech, business in the field of the communication of ideas may still be regulated in a reasonable manner. (*Weaver* v. *Jordan* (1966) 64 Cal.2d 235, 246-247 [49 Cal.Rptr. 537, 411 P.2d 289].) In *National Broadcasting Co.* v. *United States,* 319 US 190 [87 L.Ed. 1344, 63 S.Ct. 997], the United States Supreme Court upheld the power of the federal government to require that broadcasters be licensed and that such a license could be denied because of certain behavior on the part of the applicant. In *Hirsh* v. *City & County of San Francisco* (1956) 143 Cal.App.2d 313 [300 P.2d 177], the Court of Appeal upheld business regulations because they were reasonable, although the business involved elements of public expression. In so doing, they applied principles set out in *In re Porterfield* (1946) 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675], a case striking down certain regulations of union organizers because of the high value of the speech involved, but which recognized that regulation could be valid though a balancing test must be taken into account weighing the value of the speech involved. Applying the balancing test to the instant case, we conclude the licensing provision must be upheld since we see no communicative value in the kind of forms involved.

It is contended that defendants' prosecution denied them equal protection of the laws. We recognize that uneven enforcement of the laws can be a denial of equal protection. (*Yick Wo* v. *Hopkins,* 118 US 356 [30 L.Ed. 220, 6 S.Ct. 1064].) Generally, such unequal enforcement must be accompanied by a malicious intent on the part of the prosecution before it constitutes a denial of equal protection (*Snowden* v. *Hughes* (1944) 321 US 1, 8 [88 L.Ed. 497, 502, 64 S.Ct. 397]), rather than just enforcement against those parties who pose the largest threat to the state, or enforcement that is the most efficient means of enforcing the law, given the limited resources of the state agency (*Oyler* v. *Boles* (1962) 368 US 448, 456 [7 L.Ed.2d 446, 452, 82 S.Ct. 501]). A denial

of equal protection involves the unequal treatment of persons equally situated. In the instant case, there has been no showing that there were others involved in the designing and selling of such forms as their primary business who have not been prosecuted. Nor has there been showing of administrative bias against these defendants. Assuming for the moment that stationery stores were covered by the act, certainly a stationery store whose dealings in such forms is minimal does not pose an "equal threat" to the interest to which the state seeks control. We find no merit in the contention that these defendants have been denied equal protection. (See *People* v. *Gray*, 254 Cal.App.2d 256 [63 Cal.Rptr. 211].)

### *The Injunction Against Defendants*

It is contended that requiring defendants to obtain a license is an unreasonable interference with their right to conduct a legitimate business. Economic regulation will not be interfered with unless there is *no* reasonable basis for its promulgation. (*Doyle* v. *Barber Examiners* (1963) 219 Cal.App. 2d 504 [33 Cal.Rptr. 349]; *Hope* v. *Contractors' etc. Board* (1964) 228 Cal.App.2d 414 [39 Cal.Rptr. 514].) The defendants in the instant case vigorously promoted their forms in a manner that intimately involved them in the debt collection process of large companies. The Legislature has manifested a clear intent to closely scrutinize those in such activity. The Legislature has concluded that debt collection is a fertile field for the attraction of elements whose effectiveness comes from an overzealous use of coercion, and that persons entering this field are to be screened because of this risk. That this is a reasonable and continuing area where such control is needed, see generally "Report of the Senate Interim Committee on Collection Agencies, Private Detectives and Debt Liquidators (1957)," particularly with reference to abuses that come from forms (pp. 35-38, 40-41). The California Supreme Court has upheld licensing requirements in the small-loans field, an area which presents the potential for many of the abuses that are present in the collection field. (*In re Fuller* (1940) 15 Cal.2d 425, 431 [102 P.2d 321].) We do not intend to impugn defendants' moral character by recognizing that they are dealing in an area which the state feels may attract undesirable elements and therefore requires a person entering that field to procure a license.[10]

The question then is whether these defendants "rep-

---

[10]Nowhere is there a claim that the license fee is excessive.

resented'' their forms to be a ''collection system, scheme, or device.'' There is no question but that defendants successfully sought to sell their forms by extolling their effectiveness. There can be no question but that they were intimately involved in the debt collection business within the area of their activity; the defendants being thus intimately involved, it seems equally clear that the legislative intent was to cover them. There seems to us little question but that the factors that make these forms a ''system, scheme, or device'' were actively brought to the attention of potential customers in the promotional activities of defendants' sales representatives. A statement by defendant S. Floersheim and received in evidence is typical: he said, to one S. L. McClary, that when a debtor sees the envelope from Washington, D.C., ''That makes the difference because this is a foreign name to them. Do you follow what I mean? Now they open it. Now they read it. Now it's no longer coming directly from the creditor, meaning you, it's coming from somebody else saying now get in and pay it. This is why it works—the power of the third party.'' There was the required representation that these forms were effective because of elements that added pressure to pay or supply information over and above that which would come from a normal bill or information-request from a creditor. The consequence is that defendants acted as a collection agency as it is defined by the second portion of section 6853.

The trial court only enjoined the defendants from the use of various of its forms that gave the appearance of emanating from a third party. The trial court enjoined defendants from providing services as a part of its package-sale of forms. The state is entitled to a broader injunction, one that enjoins these defendants from further sales of, or offering for sale, forms which they represent to be a ''collection system, scheme, or device'' (or portion thereof) without being validly licensed. To the extent that the trial court's order enjoins defendants from performing certain services in conjunction with sales of forms, and to the extent that it prevents the sale of forms suggesting the involvement of a third party, all as part of a ''collection system, scheme, or device,'' the order is proper. In addition thereto, the plaintiff is entitled to an injunction restraining defendants from further offering for sale or sale of forms, with or without services of defendant, which forms are represented by defendants to be a ''collection system, scheme, or device,'' which includes all the forms involved in this case, until they are duly licensed as a collection agency.

The case is remanded to the superior court with directions to deny relief to the defendants on their counterclaim, and to issue an injunction against defendants in conformity with this opinion.

Kaus, P. J., and Hufstedler, J., concurred.

A petition for a rehearing was denied December 11, 1967, and the petition of the defendants and appellants for a hearing by the Supreme Court was denied January 17, 1968. Mosk, J., did not participate therein.