Filed 2/1/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RONALD F., | No. B267819 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. BS147679) |
| v. | |
| DEPARTMENT OF DEVELOPMENTAL SERVICES, | |
| Defendant and Respondent; | |
| NORTH LOS ANGELES REGIONAL CENTER, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Robert H. O'Brien, Judge. Affirmed.

Barton, Klugman & Oetting and Thomas E. Beltran for Petitioner and Appellant.

No appearance for Defendant and Respondent.

Fraser Watson & Croutch and Daniel K. Dik for Real Party in Interest and Respondent.

Appellant Ronald F. appeals the denial of his petition for writ of administrative mandamus seeking to overturn the denial of his claim for services under the Lanterman Developmental Disabilities Services Act (Welf. & Inst. Code, § 4500 et seq.) (Lanterman Act).[1]  The trial court denied the petition on the ground that appellant's claim was barred by the doctrine of res judicata because his ineligibility for services had been previously adjudicated in two prior proceedings.  Appellant contends res judicata does not apply because the court's decision in *Samantha C. v. State Dept. of Developmental Services* (2012) 207 Cal.App.4th 71 (*Samantha C.*) and a 2003 amendment to the Lanterman Act constitute an intervening change in the law or a doctrinal change that precludes application of the doctrine.  We conclude that appellant's claim is barred by the doctrine of res judicata and affirm the judgment on that basis.

## BACKGROUND

Appellant was born in March 1970.  In 1987, at the age of 17, he became a client of the Westside Regional Center (WRC).  Because WRC could not find a placement for him among its available facilities, it placed appellant out of state in a special education school in Texas.  During appellant's out-of-state placement, his regional center file was inactivated.

While in Texas, appellant sought to reactivate his file.  WRC reassessed him in December 1989, and in January 1990, an interdisciplinary team determined that he was ineligible for regional center services.  Appellant did not appeal that decision but instead submitted additional information to WRC in

_____

[1]    All further statutory references are to the Welfare and Institutions Code.

2

November 1991.  In December 1991, WRC again found him ineligible.

**1993 judgment**

Appellant appealed the December 1991 decision finding him ineligible for regional center services and was granted an evidentiary hearing.  In a March 1992 written decision of the Office of Administrative Hearings, an administrative law judge (ALJ) made detailed factual findings regarding appellant's condition.  The ALJ found that appellant was not autistic or mentally retarded, and that he did not suffer from cerebral palsy or a seizure disorder.  The ALJ further found that shortly after a head injury appellant sustained in February 1985, appellant began exhibiting provocative, schizophrenic, oppositional, and destructive behaviors, including "acts of violence towards family and others, property destruction, verbal threats, self-injury and attempted suicide, paranoia, depression, lethargy, disorientation, [and] olfactory hallucinations."  The ALJ determined that appellant's condition was not similar to or closely related to mental retardation and did not require treatment similar to that required by persons with mental retardation:  "The evidence, under careful review, describes claimant's difficulties as behavioral and impulse control.  He requires a highly structured behavioral-oriented residential brain injury rehabilitation treatment.  This is not similar to treatment provided to individuals with mental retardation."

Appellant filed a petition for writ of administrative mandamus, seeking to overturn the ALJ's March 1992 decision finding him ineligible for regional center benefits.  In a statement of decision and judgment entered on January 5, 1993, the superior court found that the weight of the evidence supported

the ALJ's findings, including the finding that appellant did not have an eligible condition for regional center services. Appellant did not appeal the January 1993 judgment.

**1998 administrative decision**

Appellant did nothing further until early 1996, when he again applied for regional center benefits. After an informal hearing, WRC denied benefits to appellant. Appellant again appealed the denial of benefits. A four-day evidentiary hearing was held between September 15, 1997, and May 6, 1998. During the course of the hearing, the ALJ continued the matter in order to allow WRC to have appellant tested for temporal lobe epilepsy at UCLA. The testing resulted in a diagnosis of post-traumatic epilepsy; however, the ALJ found that the results failed to establish that appellant suffered from a substantially handicapping seizure disorder before he reached the age of 18.

At the conclusion of the hearing, the ALJ found that appellant's petition was barred by the doctrine of res judicata. The ALJ also found, based on the additional evidence presented at the hearing, that appellant factually did not qualify for regional center services: "Even if the doctrine of res judicata had not served as a complete bar to this action, Claimant still would not have sustained his burden of proof with respect to eligibility for regional center services. Based on the evidence reviewed by [the ALJ in the 1992 proceeding], Claimant failed to meet the eligibility requirements. His experts' opinions and reports in the instant matter only served as cumulative evidence and, if anything, were less credible than they would otherwise have been, had the experts' testing been performed at the time Claimant was under the age of 18, and therefore within the chronological window for eligibility." Appellant's claim for

4

benefits was again denied on July 14, 1998. Appellant did not appeal the ALJ's 1998 decision.

**2015 judgment**

On September 27, 2012, appellant again applied for regional center benefits, this time with the North Los Angeles County Regional Center (NLACRC). NLACRC denied his application, and appellant requested administrative review of the NLACRC's decision.

NLACRC moved to dismiss the appeal on the ground that appellant's eligibility for regional center services had already been litigated in two prior proceedings and that collateral estoppel barred him from relitigating the issue. Appellant opposed the motion to dismiss, arguing that the court's decision in *Samantha C.* effected an intervening change in the law or a doctrinal change that precluded application of collateral estoppel. Appellant argued that the *Samantha C.* court's interpretation of the term "treatment" in section 4512, subdivision (a) of the Lanterman Act constituted a doctrinal change. NLACRC in turn submitted a subsequent administrative decision, *In re Terry C.* (Apr. 12, 2011) OAH No. 2010011014 (*Terry C.*) that criticized *Samantha C.* as support for its argument that *Samantha C.* did not effect a change in the law or a doctrinal change that would preclude collateral estoppel. The ALJ ordered supplemental briefing on *Samantha C.* and *Terry C.* and their impact on appellant's claim.

At the conclusion of the hearing, the ALJ issued a decision dated December 12, 2013, denying appellant's claim for benefits as barred by the doctrine of res judicata. The ALJ concluded that appellant had not established that *Samantha C.* effected a doctrinal change, as there was no indication that the court's

5

interpretation of the statutory language in that case had caused any shift in the legal landscape.

Appellant filed a petition for writ of administrative mandamus appealing ALJ's December 2013 decision. After hearing argument from the parties, the trial court affirmed the denial of regional center benefits on the ground that appellant's claim was barred by the doctrine of res judicata. Judgment was entered against appellant on August 24, 2015. This appeal followed.

## DISCUSSION

## I. Standard of review and general legal principles

The instant case involves applicability of the doctrine of res judicata, as well as interpretation and application of the Lanterman Act, legal issues that we review de novo. (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 618.)

With regard to issues of statutory interpretation, our analysis begins by ascertaining the legislative intent underlying the statute "so that we may adopt the construction that best effectuates the purpose of the law. [Citation.]" (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 (*Hassan*).) We first examine the words of the statute as the best indication of legislative intent. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026.) Those words are given their ordinary and usual meaning and are construed in their statutory context. (*Hassan, supra*, at p. 715.) Judicial construction that renders any part of the statute meaningless or inoperative should be avoided. (*Ibid.*)

If the language of the statute is clear, it is applied without further inquiry. (*Aleman v. AirTouch Cellular* (2012) 209 Cal.App.4th 556, 568.) If the language can be interpreted to have

more than one reasonable meaning, a court may consider "'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.]" (*Id.* at pp. 568-569.)

## II. Res judicata

### A. Overview and purpose

The doctrine of res judicata bars relitigation of a cause of action resolved, or that could have been resolved in a prior adjudicatory proceeding. (*Hi-Desert Medical Center v. Douglas* (2015) 239 Cal.App.4th 717, 733.)

The threshold elements for res judicata are: "'"(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. [Citations.]'" [Citation.]" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.)

### B. Effect of changes in law

Res judicata does not apply when the proceeding in which the doctrine is invoked involves different substantive law than the previous proceeding. (*California Hosp. Assn. v. Maxwell-Jolly* (2010) 188 Cal.App.4th 559, 572.) "The law defines the issue in the first action; thus, when the current claim of issue preclusion involves different substantive law the second action does not present the same issue as the first. [Citations.]" (*Ibid.*; see also *Huber v. Jackson* (2009) 175 Cal.App.4th 663, 677-678 [collateral estoppel did not bar second action after new statute enacted and

new case law addressing subject]; *Powers v. Florsheim* (1967) 256 Cal.App.2d 223, 229-230 [collateral estoppel inapplicable when statute under which defendants were prosecuted was changed].)

### C. Policy considerations

Whether res judicata applies in a given case may also depend on whether application of the doctrine is consistent with underlying public policies. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342-343.) "[T]he public policies underlying collateral estoppel -- preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation -- strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy. [Citation.]" (*Id.* at p. 343.)

## III. Lanterman Act

### A. Overview and purpose

The Lanterman Act is a comprehensive statutory scheme to provide treatment, services, and supports for persons with developmental disabilities. (§ 4500, 4500.5, 4502, 4511.) The term "'[s]ervices and supports for persons with developmental disabilities'" is broadly defined in section 4512, subdivision (b) to include diagnosis, evaluation, treatment, care, special living arrangements, physical, occupational, and speech therapy, training, education, employment, and mental health services. The Lanterman Act also accords persons with qualifying developmental disabilities the right to receive treatment and services at state expense. (§ 4502.)

The Department of Developmental Services (DDS), a state agency, is charged with implementing the statutory scheme. The DDS, in turn, contracts with private nonprofit corporations to

establish and operate a network of regional centers that are responsible for determining eligibility, assessing needs, and providing services to the developmentally disabled. (*Association for Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d. 384, 390.)

### B. *Developmental disability and fifth category eligibility*

To be eligible for services and treatment under the Lanterman Act, a person must have a "developmental disability," defined in section 4512 as "a disability that originates before an individual attains 18 years of age; continues, or can be expected to continue, indefinitely; and constitutes a substantial disability for that individual." (§ 4512, subd. (a).) The statute identifies five categories of disabling conditions that are eligible for services: (1) intellectual disability,[2] (2) cerebral palsy, (3) epilepsy, (4) autism, and (5) "disabling conditions found to be closely related to intellectual disability or to require treatment similar to that required for individuals with intellectual disability, but shall not include other handicapping conditions that are solely physical in nature." (*Ibid.*)

Under the fifth category of disabling conditions specified in section 4512, subdivision (a), a person may qualify for services in two ways: (1) by having a disabling condition found to be "closely related to" intellectual disability or mental retardation; or (2) by having a disabling condition that requires "treatment similar to"

_____

[2]  The term "intellectual disability" was substituted for the term "mental retardation" in an amendment to section 4512, subdivision (a) that became effective on January 1, 2014. (Stats. 2013, ch. 289, § 3.)

that required by persons with intellectual disability or mental retardation. (§ 4512, subd. (a); *Samantha C., supra,* 185 Cal.App.4th at p. 1492.) Courts have observed that the statutory terms "closely related to" and "treatment similar to" are general and somewhat imprecise. (*Samantha C.,* at p. 1484; *Mason v. Office of Admin. Hearings* (2001) 89 Cal.App.4th 1119, 1128 (*Mason*).) "'However . . . "[w]here the language of a statute fails to provide an objective standard by which conduct can be judged, the required specificity may nonetheless be provided by the common knowledge and understanding of the members of the particular vocation or profession to which the statute applies.". . . [T]he Lanterman Act and implementing regulations clearly defer to the expertise of the DDS and [regional center] professionals and their determination as to whether an individual is developmentally disabled. General, as well as specific guidelines are provided in the Lanterman Act and regulations to assist such [regional center] professionals in making this difficult, complex determination. . . .' [Citation.]"[3] (*Samantha C., supra*, at p. 1484, quoting *Mason, supra,* at pp. 1128-1129.)

_____

[3] Some of the available guidelines include the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR) (see *Mason, supra*, 89 Cal.App.4th at p. 1132) and guidelines established by the Association of Regional Center Agencies (ARCA), a trade association for regional centers. (*Samantha C., supra,* 185 Cal.App.4th at p. 1477.) The DSM-IV defines mental retardation as a condition that exists when an individual has both a subaverage IQ score (70 or below) and significant impairment of adaptive or social functioning skills. (*Mason,* at p. 1132.) The ARCA guidelines state that when determining whether a person requires treatment similar to that required by persons with mental retardation, "'the team should consider *the*

10

To be eligible for services under section 4512, subdivision (a), a person must not only have a qualifying "developmental disability," that disability must also constitute a "substantial disability for that individual." (§ 4512, subd. (a).)  The term "substantial disability" is defined in subdivision (l) of section 4512, which was added by a 2003 amendment to the statute. Subdivision (l) of section 4512 defines "substantial disability" as "the existence of significant functional limitations in three or more of the following areas of major life activity, as determined by a regional center, and as appropriate to the age of the person: [¶] (A) Self care.  [¶]  (B) Receptive and expressive language. [¶] (C) Learning.  [¶]  (D) Mobility.  [¶]  (E) Self-direction.  [¶]  (F) Capacity for independent living.  [¶]  (G) Economic self-sufficiency."

In addition to having a condition that meets the foregoing statutory requirements, a claimant seeking fifth category eligibility under section 4512, cannot have a "handicapping condition" that is "solely physical in nature."  (§ 4512, subd. (a).) Implementing regulations promulgated by the DDS define in greater detail the conditions that come within this exclusion.  As relevant here, the California Code of Regulations states that "[t]hese conditions include congenital anomalies or conditions acquired through disease, accident, or faulty development which are not associated with a neurological impairment that results in a need for treatment similar to that required for mental retardation."  (Cal. Code Regs., tit. 17, § 54000, subd. (c)(3).)

---

*nature of training and intervention* that is most appropriate for the individual who has global cognitive deficits.'" (*Samantha C.,* at p. 1477.)

11

Appellant contends res judicata does not bar the instant action because the 2003 amendment defining the term "substantial disability" in section 4512, subdivision (l) and the court's decision in *Samantha C.* constitute changes in the law or doctrinal changes subsequent to the 1993 and the 1998 adjudications that found him ineligible for regional center services. As we discuss, neither the *Samantha C.* decision nor the 2003 amendment to section 4512 bars application of res judicata in this case.

## IV. *Samantha C.*

*Samantha C.* involved a claimant who was born two and one-half months premature with a hypoxic birth injury causing cognitive disabilities and adaptive functioning deficits. (*Samantha C., supra*, 185 Cal.App.4th at p. 1470.) She was found ineligible for regional center services because she did not require treatment similar to that required for individuals with mental retardation.[4] (*Id.* at pp. 1494-1495.) The appellate court reversed, finding the claimant eligible for services under the fifth category of section 4512, subdivision (a), based on evidence that persons with mental retardation and persons with fifth category eligibility both need "many of the same kinds of *treatment*, such as *services* providing help with cooking, public transportation, money management, rehabilitative and vocational training, independent living skills training, specialized teaching and skill

_____

[4] Under the statute in effect at the time *Samantha C.* was decided, section 4512, subdivision (a) defined fifth category eligibility as a disabling condition found to be closely related to mental retardation or to require treatment similar to that required for individuals with mental retardation. (*Samantha C., supra*, 185 Cal.App.4th at pp. 1484-1485.)

development approaches, and supported employment services." (*Id.* at p. 1493, italics added.)

Appellant contends the court's decision in *Samantha C.* constitutes a change in the law that precludes application of res judicata in this case. Specifically, appellant claims the *Samantha C.* court's interpretation of the term "treatment" for purposes of fifth category eligibility determinations under section 4512, subdivision (a) is a doctrinal change that makes his current eligibility determination materially different than in the prior proceedings. We disagree with appellant's characterization of *Samantha C.* as a doctrinal change that would preclude application of res judicata. We also conclude that the *Samantha C.* court's interpretation of the term "treatment" is inconsistent with the plain language of the statute and for that reason we decline to apply it here.

### A. Samantha C. *did not change the legal landscape*

We disagree with appellant's claim that the court's decision in *Samantha C.* was a doctrinal change that altered the legal landscape for fifth category eligibility determinations under section 4512. *Samantha C.* was not a decision by the California Supreme Court but one rendered by the appellate court in Division One of the Second Appellate District. (*Samantha C., supra*, 185 Cal.App.4th 1462.) It is therefore not a decision that is binding upon this court or any other appellate court. (*Henry v. Associated Indemnity Corp.* (1990) 217 Cal.App.3d 1405, 1416 [decisions of one appellate court have no stare decisis effect and are not binding upon other appellate courts].)

Appellant has cited no other appellate court decisions that have adopted the *Samantha C.* court's interpretation of "treatment" for purposes of fifth category eligibility

determinations under section 4512, subdivision (a).  There is one administrative decision, *Terry C.*, of which the trial court took judicial notice, in which the ALJ expressly refused to follow *Samantha C.*

### B.  The Samantha C. *court's interpretation conflicts with the plain language of section 4512*

The court in *Samantha C.* found the claimant eligible for regional center benefits because she required "treatment" similar to that required by individuals with mental retardation.  In making this determination, the court conflated "treatment" as used in section 4512, subdivision (a), with "services" for persons with developmental disabilities, such as those listed in subdivision (b) of the statute.  For example, the court in *Samantha C.* referred to evidence that "clients with mental retardation and with fifth category eligibility both needed many of the same kinds of *treatment*, such as *services* providing help with cooking, public transportation, money management, rehabilitative and vocational training, independent living skills training, specialized teaching and skill development approaches, and supported services" as well as "undisputed" testimony "that Samantha needed all of these types of *treatment*."  (*Samantha C., supra,* 185 Cal.App.4th at p. 1493, italics added.)

The *Samantha C.* court's failure to distinguish between "treatment" and "services" is inconsistent with the plain language of the statute.  Section 4512 defines a qualifying "developmental disability" as a disabling condition that requires "*treatment* similar to that required for individuals with an intellectual disability."  (§ 4512, subd. (a), italics added.)  The statutory definition does not include disabling conditions requiring similar *services*.

14

That the Legislature intended the term "treatment" to have a different and narrower meaning than "services" is evident in the statutory scheme as a whole. The term "services and supports for persons with developmental disabilities" is broadly defined in subdivision (b) of section 4512 to include those services cited by the court in *Samantha C.*, e.g., cooking, public transportation, money management, and rehabilitative and vocational training, and many others as well. (§ 4512, subd. (b); *Samantha C., supra*, 185 Cal.App.4th at p. 1493.) "Treatment" is listed as one of the services available under section 4512, subdivision (b), indicating that it is narrower in meaning and scope than "services and supports for persons with developmental disabilities."

The term "treatment," as distinct from "services" also appears in section 4502, which accords persons with developmental disabilities "[a] right to *treatment* and habilitation *services* and supports in the least restrictive environment. *Treatment* and habilitation *services* and supports should foster the developmental potential of the person and be directed toward the achievement of the most independent, productive, and normal lives possible. Such *services* shall protect the personal liberty of the individual and shall be provided with the least restrictive conditions necessary to achieve the purposes of the *treatment*, *services*, or supports." (§ 4502, subd. (b)(1), italics added.) The Lanterman Act thus distinguishes between "treatment" and "services" as two different types of benefits available under the statute.

In *Terry C.*, the administrative decision that refused to apply *Samantha C.*, the ALJ noted that fifth category eligibility under section 4512, subdivision (a) must be based on a claimant's

15

need for "treatment" similar to that required by individuals with mental retardation, but that "[t]he wide range of services and supports listed under section 4512, subdivision (b), are not specific to mental retardation. One would not need to suffer from mental retardation, or any developmental disability, to benefit from the broad array of services and supports provided by a regional center to individuals with mental retardation." The ALJ further noted that "[i]n *Samantha C.,* no attempt was made to distinguish treatment under the Lanterman Act as a discrete subset of the broader array of services potentially provided to those seeking fifth category eligibility."

We agree that the *Samantha C.* court's broad interpretation of "treatment" is inconsistent with the language and intent of section 4512. We decline to apply that interpretation as the basis for allowing appellant to relitigate issues that were previously adjudicated against him.

## V. The 2003 amendment to section 4512

Appellant contends the 2003 amendment to section 4512 defining the term "substantial disability,"**5** together with the *Samantha C.* decision, constitutes an intervening change in the law that precludes application of res judicata in this case. Appellant failed to establish that *Samantha C.* effected a doctrinal change or change in the legal landscape that would preclude application of res judicata. He offers no argument or

_____

**5** Section 4512 subdivision (l) defines "substantial disability" as "the existence of significant functional limitations" in three or more of the following areas of major life activity: (1) self care; (2) receptive and expressive language; (3) learning; (4) mobility; (5) self-direction; (6) capacity for independent living; or (7) economic self sufficiency.

16

explanation -- independent of the *Samantha C.* court's analysis -- as to how the 2003 amendment defining a "substantial disability" makes the issues in the instant appeal different than those in the prior proceedings in which he was determined to have no qualifying developmental disability. As discussed, in order to be eligible for services, a claimant must have a qualifying "developmental disability" *and* that disability must *also* constitute a "substantial disability." (§ 4512, subd. (a).) Appellant has failed to establish that section 4512, subdivision (l) constitutes an intervening change in the law that would alter the prior determinations that he has no qualifying "developmental disability."

## VI. Public policy considerations

"A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.' [Citation.]" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal. 4th 888, 897.) Over the course of the past 25 years, appellant has been accorded multiple opportunities and two evidentiary hearings in which to litigate the issue of his eligibility for regional center services. Public policy and the interest of the litigants themselves require that there be an end to this litigation.

17

**DISPOSITION**

The judgment is affirmed.  The parties shall each bear their respective costs on appeal.

**CERTIFIED FOR PUBLICATION**

_____, J.
CHAVEZ

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.*
GOODMAN

_____

* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice  pursuant to article VI, section 6 of the California Constitution.

18