Filed 5/5/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| TRI-COUNTIES ASSOCIATION FOR THE DEVELOPMENTALLY DISABLED, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> VENTURA COUNTY PUBLIC GUARDIAN, as Conservator, etc., <br><br> Defendant and Appellant; <br><br> A.V., <br> Real Party in Interest and Appellant. | 2d Civ. No. B300557 <br> (Super. Ct. No. 56-2018- <br> 00511345-CU-WM-VTA) <br> (Ventura County) |

A.V. came to the attention of Respondent Tri-Counties Regional Center[1] in 2002 when it evaluated him at age 7 for

---

[1] We refer to respondent Tri-Counties Association for the Developmentally Disabled, Inc., dba Tri-Counties Regional Center as "Regional Center" throughout this opinion.

autism, one of five qualifying conditions for services under the Lanterman Developmental Disabilities Services Act. (Welf. & Inst. Code, § 4500 et seq.; the "Act").[2] Its intake evaluators observed symptoms of Asperger's Syndrome but did not consider his condition severe enough to qualify for services.

A.V.'s next contact with the Regional Center came at age 19 after he experienced a series of psychiatric emergencies. The agency noted symptoms of autism spectrum disorder (ASD), a condition which includes those individuals formerly diagnosed with Asperger's. However, its evaluators attributed A.V.'s intensifying mental health problems to a non-qualifying condition, schizophrenia, that manifested after he reached the Act's eligibility cut-off of age 18. They again denied services.

A.V. appealed to the Department of Developmental Services (DDS). An administrative law judge (ALJ) specially trained in "the law and regulations governing services to developmentally disabled individuals" overturned the denial after a lengthy proceeding conducted under the Act's fair hearing procedures. (§ 4712, subd. (b).) The ALJ found A.V. met the statutory criteria for developmental disability: he had a qualifying condition of autism, i.e., ASD; his ASD was substantially disabling; and the condition originated before age 18. (§ 4512, subd. (a).) The ALJ rejected the Regional Center's argument that a qualifying condition must not only originate but must also become "substantially disabling" before age 18.

The superior court reversed the fair hearing decision after the Regional Center petitioned for a writ of administrative

---

[2] Unlabeled statutory references in this opinion are to the Welfare and Institutions Code.

2

mandamus. The court agreed with the ALJ's decision to the extent it found a claimant's qualifying condition need not become substantially disabling before age 18. There it parted ways. The court found the ALJ erred by weighing the parties' evidence "on an even playing field" rather than deferring to the Regional Center's opinions about A.V.'s eligibility for services under the Act. It entered judgment against A.V. and his conservator, who now appeal.

We conclude the superior court erred when it deferred to the Regional Center's eligibility determinations. A fair hearing under the Act is just that – an even playing field on which the participants present their evidence to an impartial hearing officer. The superior court owed deference not to the Regional Center's evaluators but to the administrative process created to fairly resolve disputes over eligibility for services.

We reverse the judgment and direct the superior court to review the petition under the appropriate standard on remand.[3]

FACTUAL BACKGROUND

A.V. grew up in Simi Valley, California. Significant behavioral problems arose early in his life. Elementary school teachers observed him vacillate between near-catatonia and intractable mischief. Tests administered by Simi Valley Unified School District (SVUSD) in 2001, at age 7, supported a diagnosis of Asperger's Syndrome and revealed "significant deficits in his

---

[3] Neither appellant nor respondent appeal the superior court's finding that a claimant's qualifying condition need not become substantially disabling before age 18 to constitute a developmental disability under section 4512, subdivision (a). As such, our opinion does not consider this question of statutory interpretation.

verbal and nonverbal communication and social interaction that adversely affect his educational performance." This behavior prompted A.V.'s parents to apply for developmental services through the Regional Center. Regional Center evaluators likewise observed symptoms of Asperger's Syndrome but determined the minor did not have substantially disabling autism or another condition that would qualify him for services under the Act. Nevertheless, SVUSD found A.V. eligible for special education under the category of "Emotional Disturbance," and in later grades, under the category of "Autism." It developed an Individualized Education Plan (IEP) and placed A.V. in a specialized public school setting from the first grade onward.

A.V.'s most disruptive behaviors subsided by high school. His teachers described him as a polite student who enjoyed discussing science and history in class. He could read and write at grade level, but his slow processing speed and distractibility prevented him from keeping up in general education courses. He graduated in 2013 despite these challenges and began a program at Moorpark College for students with disabilities.

A.V.'s mental health deteriorated soon after he left high school. Police found him incoherent and hallucinating in a discount store bathroom in June of 2014. He complained to emergency room staff about hearing voices and feeling "numb" in his brain. Physicians transferred him to Las Encinas Mental Health Hospital in Pasadena on a section 5150 hold.[4] He

---

[4] Welfare and Institutions Code section 5150, subdivision (a) permits peace officers and designated mental health professionals to take persons considered a danger to self or others into custody "for a period of up to 72 hours for assessment, evaluation, and crisis intervention."

received a week of inpatient treatment but returned to the emergency room four days later when he again heard voices. A second inpatient admission followed, this time at Del Amo Hospital in Torrance.

A.V.'s psychiatric condition eroded further when his 13-year-old sister died in an apparent suicide in August of 2014. Now 19, he began leaving his home more frequently and wandering around Simi Valley half-dressed or naked. He twice ventured on foot to his former high school. Bystanders would often find him lying unresponsive on the ground following these episodes. Hillmont Psychiatric Center (Hillmont), the acute psychiatric unit of Ventura County Medical Center, assessed him 42 times between August of 2014 and March of 2016. Twenty-two of these visits required inpatient admission. A.V. also received several weeks of inpatient care at Henry Mayo Newhall Memorial Hospital in Valencia and UCLA during this period. The superior court appointed his mother, and later appellant Ventura County Public Guardian (Public Guardian), as his conservator.[5]

Hillmont's staff observed A.V. display repetitive, autistic-type behaviors once his episodes of stress-induced psychosis subsided.[6] They concluded A.V. would greatly benefit from the

---

[5] *In the Matter of A.V.* (Super. Ct. Ventura County, 2015, No. 56-2015-00468470-PR-CP-OXN).

[6] This included behaviors such as "stimming" or self-stimulating by hand flapping; patterned pacing for hours at a time; acting out with staff to invoke placement in restraints; applying excessive hand sanitizer; and fixating on rigid routines and diet during his often-lengthy admissions.

type of intensive behavioral therapy provided through the Regional Center. Hillmont psychiatrist Dustin Sanchez, M.D. contacted Tri-Counties' Director of Clinical Services, Steven Graff, Ph.D., and recommended they collaborate to provide A.V. a combination of psychiatric treatments and behavioral therapies.[7] Several in-person assessments by Tri-Counties evaluators followed. They observed symptoms of ASD[8] but attributed his present disability to an adult-onset psychiatric illness induced by his sister's death. They recommended Tri-Counties deny services because A.V. did not have a substantially disabling form of autism or any other eligible diagnosis before he turned 18 – the

---

[7] Solely psychiatric disorders such as schizophrenia and major depressive order do not constitute developmental disabilities. (Cal. Code Regs., tit. 17, § 54000, subd. (c)(1).) However, the Act directs Regional Centers and county medical health agencies to cooperate when necessary to improve the "quality of mental health outcomes" of dually diagnosed individuals requiring both developmental and mental health services. (§ 4696.1, subd. (a).)

[8] The concept of autism as a spectrum of conditions evolved significantly during the decade-plus between A.V.'s first and second evaluations. Mental health professionals largely discarded the discrete sub-diagnoses previously grouped within autism, such as Asperger's and Rett Syndromes, in favor of "umbrella" diagnoses of ASD specified as mild (Level 1), moderate (Level 2), or severe (Level 3). (See, e.g., Barry, *Gray Matters: Autism, Impairment, and the End of Binaries* (2012) 49 San Diego L. Rev. 161, 214 [commenting on Asperger's impending "disappear[ance] from the lexicon of the [American Psychological Association]" upon the transition from DSM-IV to DSM-V in 2013].)

6

age cutoff for those seeking to establish eligibility for Regional Center services.

PROCEDURAL HISTORY

Tri-Counties served a Notice of Proposed Action to deny A.V.'s eligibility in May of 2017. The Public Guardian appealed the decision by requesting a fair hearing under the Act. Matthew W. Goldsby, an ALJ with the Office of Administrative Hearings (OAH), conducted the hearing over six days.[9] The parties introduced testimony from two psychiatrists, three psychologists, a pediatrician, a pharmacologist, two licensed social workers, a behavioral therapist, and a special education consultant. They submitted 166 exhibits relating to A.V.'s behavioral health, mental health, and education over the past 15 years. The administrative record exceeded 3000 pages.

The ALJ issued a comprehensive and detailed 25-page decision at the close of evidence. He concluded A.V. proved his diagnosis of autism spectrum disorder as defined by the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-V). He further found that A.V.'s disorder originated in childhood and became substantially disabling at age 19. The ALJ rejected the Regional Center's argument that a qualifying condition must both originate *and* become substantially disabling before age 18. He found A.V.'s acute psychiatric problems did not disqualify him from receiving developmental services from the Regional Center:

"'Substantial evidence supports a finding that claimant has a diagnosis of autism spectrum disorder, a qualifying condition for regional center services. . . . Although claimant may have

---

[9] OAH is an independent office housed within California Department of General Services.

suffered "a psychotic break" and may currently suffer from an unspecified mental disorder, the regulations do not deny services to an individual with a psychiatric disorder, so long as the individual can also establish a qualifying condition under the Lanterman Act.'" (Underlining omitted.)

Tri-Counties sought review by petitioning for a writ of administrative mandate. (Code Civ. Proc., § 1094.5.) The superior court rejected the Regional Center's argument that a claimant's condition must become substantially disabling before age 18 to be eligible for services. It nevertheless reversed the ALJ's decision because his analysis "accorded no significant weight or deference to the [Regional Center] professionals who evaluated [A.V.'s] entire clinical history." The superior court found the testimony of Regional Center professionals "to strongly predominate" on the issue of A.V.'s diagnosis and criticized the ALJ for "substitut[ing] his own judgment for that of the [Regional Center] professionals" by applying DSM-V's autism criteria. It granted the petition and entered judgment in favor of the Regional Center. The Public Guardian appealed the judgment on A.V.'s behalf.

DISCUSSION

*Standard of Review*

We review the superior court's judgment for substantial evidence. (*Harbor Regional Center v. Office of Administrative Hearings* (2012) 210 Cal.App.4th 293, 304, citing *Mason v. Office of Admin. Hearings* (2001) 89 Cal.App.4th. 1119, 1130 (*Mason*).) "[W]e exercise independent review to the extent we determine legal issues such as the interpretation of statutes and administrative regulations." (*Harbor Regional Center*, at p.304

8

citing *Silver v. Los Angeles County Metropolitan Transportation Authority* (2000) 79 Cal.App.4th 338, 348.)

*Establishing Eligibility for Regional Center Services*
*Under the Lanterman Act*

The Act seeks to integrate developmentally disabled Californians into mainstream life and to ensure they are accorded equal access to programs receiving state funds. (§§ 4501, 4502; see *Association for Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d 384, 389-391.) DDS is the agency charged with implementing the Act. (§§ 4434, 4629, 4635; *Ronald F. v. State Dept. of Developmental Services* (2017) 8 Cal.App.5th 84, 94 (*Ronald F.*).) In turn, DDS contracts with 21 private non-profit corporations called Regional Centers to help disabled individuals secure "those services and supports which maximize opportunities and choices for living, working, learning, and recreating in the community." (§ 4640.7, subd. (a).) Tri-Counties is the Regional Center serving the counties of Ventura, Santa Barbara, and San Luis Obispo.

One must have a "developmental disability" to qualify for Regional Center services. The Act defines the term as a condition "that originates before an individual attains 18 years of age, continues, or can be expected to continue, indefinitely, and constitutes a substantial disability for that individual." (§ 4512, subd. (a); see Cal. Code Regs., tit. 17, § 54000.) Autism is one of five conditions that may establish an individual's eligibility.[10]

---

[10] The four other conditions include intellectual disability, cerebral palsy, epilepsy, and what are referred to as "fifth category" conditions, i.e., "disabling conditions found to be closely related to intellectual disability or to require treatment similar to

(§ 4512.) Neither the Act nor DDS regulations define the term "autism." Instead, the Regional Center's intake coordinators assess eligibility using diagnostic criteria developed by the organization's mental health professionals. (§ 4642, subd. (a)(1).)[11] The Regional Center then notifies claimants whether they are eligible for services under one or more qualifying categories.

Successful claimants obtain an Individual Program Plan (IPP). The IPP may include services such as speech therapy and social skills training for children and employment programs and transportation for adults. Unsuccessful claimants may appeal the Regional Center's decision by requesting a "fair hearing." (§ 4706, subd. (a).) The Act requires DDS to promulgate hearing procedures and to provide independent hearing officers to decide the appeals. (§§ 4705, subd. (a)(1), 4710.5, 4712, subd. (b); Cal. Code Regs., tit. 17, § 50900 et seq.) DDS contracts with the OAH to provide these hearing officers. The ALJs assigned to DDS matters must complete training in "the [Act] and regulations adopted thereunder, relevant case law, information about

that required for individuals with an intellectual disability." (§ 4512, subd. (a).)

[11] We grant appellants' December 15, 2020 unopposed request for judicial notice of four DDS publications: (1) the Client Development Evaluation Report Field Manual; (2) Autistic Spectrum Disorders: Changes in The California Caseload An Update: 1999-2003; (3) Quarterly Consumer Characteristics Report Index for the End of September 2020; and (4) the Glossary of Terms. We previously granted the unopposed request for judicial notice of amicus curiae Association of Regional Center Agencies, Incorporated, in our order dated January 21, 2021.

services and supports available to persons with developmental disabilities, including innovative services and supports, the standard agreement contract between the department and regional centers and regional center purchase-of-service policies, and information and training on protecting the rights of consumers at administrative hearings . . . ." (§ 4712, subd. (b).)

*DDS Hearing Officers Need Not Defer to the Eligibility Determinations of Regional Center Evaluators*

The superior court found the ALJ abused his discretion by failing "to give substantial weight and deference to [the Regional Center's] evaluation, assessment, and determination that [A.V.] does not suffer from autism within the meaning of section 4512, subdivision (a)." It concluded ALJ reached the wrong result because it weighed the evidence of both sides "on an even playing field" instead of giving Regional Center professionals "the weight and deference they are due."

The ALJ owed them no such deference. The only deference the Regional Center enjoyed at the hearing was A.V.'s burden to prove his eligibility by a preponderance of the evidence. (§ 4712, subd. (j); see *Lindsay v. County of San Diego Retirement Board* (1964) 231 Cal. App. 2d 156, 161-162, citing *Albonico v. Madera Irr. Dist.* (1960) 53 Cal.2d 735 ["A party having the burden of proof before an administrative agency must sustain that burden, and it is not necessary for the agency to show the negative of the issue when the positive is not proved"].) One's affiliation with a Regional Center does not bolster their credibility. The cases cited by the superior court do not place an evidentiary halo on any witness. (*Ronald F.*, *supra*, 8 Cal.App.5th 84; *Samantha C. v. State Dept. of Developmental Services* (2010) 185 Cal.App.4th 1462; *Mason, supra*, 89 Cal.App.4th 1119.)

11

In reversing the ALJ's decision, the superior court wrote "[i]t was not for the hearing officer to substitute his own judgment for that of the [Regional Center] professionals . . . [l]ikewise, it is not for this Court to substitute its judgment for that of the [Regional Center] professionals in determining whether [A.V.] does or does not suffer from autism." This conflates the roles of DDS fair hearing officers and superior court judges. The initial eligibility determinations of California's 21 service agencies remain subject to review by DDS consistent with its statutory directive to "oversee the [Regional Center]'s assessment of eligibility and provision of services." (*Mason*, *supra*, 89 Cal.App.4th at p. 1127.) Fair hearing officers are DDS's internal arbiters of disputed eligibility claims, not judicial interlopers. (§ 4712.5, subd. (a) [ALJ's written rulings constitute DDS's "final administrative decision"], § 4712.7 ["the director may delegate his or her authority to adopt final decisions under this chapter to hearing officers described in subdivision (b) of Section 4712"].) The line of cases cited by the superior court espouses deference to the administrative system created to implement the Act, not to Regional Center professionals specifically. (*Mason*, at p. 1129.)

The deference owed to a Regional Center psychologist is not distinct from, or superior to, that owed to an ALJ tasked with making DDS's final eligibility determination. Each serves an important function delegated to them under the Act. The fair hearing process serves as a check on Regional Centers' considerable discretion to both develop and implement eligibility criteria under the Act. The ALJ did not abuse his discretion by weighing the evidence on an even playing field. Doing so confirms he performed his duties impartially.

12

*Courts Must Accord a Strong Presumption of Correctness to the*
*Eligibility Determinations of DDS Hearing Officers*

The Administrative Adjudication Bill of Rights directs courts to "give great weight to the determination" of a DDS-appointed ALJ "to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it." (Govt. Code, § 11425.50, subd. (b).) This "strong presumption of correctness" applies even where, as here, the superior court exercises its independent judgment to determine whether the weight of the evidence supports the agency's findings. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

The superior court recites this presumption twice in its statement of decision. These references, however, conflict with the erroneous standard of review woven into the decision's fabric. This conflict is evident where the superior court discredits the ALJ's finding that A.V.'s treating psychiatrist was "more believable" on the stand than Regional Center professionals "who evaluated A.V.'s entire clinical history." Indeed, making such credibility determinations was precisely what the Act required the hearing officer to do. The superior court's sweeping conclusion that the evidence "strongly predominates" against A.V.'s autism diagnosis demonstrates this error colored the court's review of a lengthy and nuanced administrative record. "[W]e cannot properly review the trial court's findings and decision for substantial evidence" when those findings are "infected by fundamental error." (*Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 824.) We will instead reverse the judgment and instruct the superior court to apply the correct standard when reviewing the ALJ's decision and the administrative record on remand.

13

*The ALJ Correctly Relied on DSM-V's Diagnostic Criteria for Autism Spectrum Disorder to Determine A.V.'s Eligibility for Regional Center Services*

The superior court likewise erred when it criticized the ALJ for "engraft[ing]" DSM-V's autism criteria onto the Act instead of deferring to the criteria established by Regional Center professionals. The decision to integrate DSM-V criteria into the eligibility analysis was well within the ALJ's discretion. The Act did not require him to view the Regional Center's internally promulgated criteria as the controlling definition of an undefined statutory term. Indeed, we question how DDS could provide fair and impartial hearings if it did not permit hearing officers to scrutinize the diagnostic standards of front-line evaluators.

The record shows the ALJ structured his analysis around DSM-V because the parties agreed it was the appropriate standard for assessing A.V.'s eligibility. The Regional Center took the position A.V. did not qualify for services because his purported qualifying diagnoses, even if established under DSM-V, did not become "substantially disabling" until he reached adulthood. The mandamus petition and primary supporting brief took the same tack and fared no better on mandamus. Assuming *arguendo* the ALJ errantly incorporated DSM-V into his decision, the Regional Center invited the error. (See *Santa Clara Waste Water Co. v. Allied World National Assurance Co.* (2017) 18 Cal.App.5th 881, 888, citing *Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121 ["Under the invited error doctrine, a party cannot challenge a court's finding made at its insistence"].)

14

CONCLUSION

The judgment is reversed.  We direct the superior court to review the petition on remand using the standard set forth in this opinion.  Appellants shall recover their costs on appeal.

CERTIFIED FOR PUBLICATION.



PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.

15

Matthew P. Guasco, Judge
Superior Court County of Ventura
_____

Leroy Smith, County Counsel, Mitchell B. Davis, Assistant County Counsel; Disability Rights California, William Leiner, Autumn Elliot, Nishanthi Kurukulasuriya and Melinda Bird for Defendant and Appellant and for Real Party in Interest and Appellant.

Benton, Orr, Duval & Buckingham, Bruce Alan Finck and Donald R. Wood for Plaintiff and Respondent.

Enright & Ocheltree, Aaron Abramowitz and Noelle V. Bensussen for Association of Regional Center Agencies, Incorporated, as Amicus Curiae.